Golder, County Judge, vs. Littlejohn.

GOLDER, County Judge, vs. LITTLEJOHN.

WILL — EXECUTOR AND ADMINISTRATOR: (1, 2.) *Liability of executor for failure to render account.* (3–7.) *Construction of Will.* (8–18.) *Liabilities and duties of executor; rights of legatee.*

1. The failure of an executor or administrator to render an account of his administration as stipulated in his bond and required by law, is a breach upon which judgment may be entered for the penalty named in the bond. (Tay. Stats. 1653, § 20.)
2. Execution should be awarded in such a case for only such amount as may be found, upon an accounting, to be due from the executor or administrator, to the parties in whose behalf the action is brought.
3. In construing a will, effect is to be given to the *intent* of the testator, if that be not contrary to law.
4. A testator devised and bequeathed all his property, real, personal and mixed, with the rents, issues and profits thereof, to his wife during her life, to be used and enjoyed by her, and directed that after her de-

Golder, County Judge, vs. Littlejohn.

cease said property should be " sold and converted into money." and the proceeds paid to certain other legatees. *Held*, that this gave the widow a life estate in the property, with remainder to the executors in trust to sell the same after the widow's decease, and pay over the proceeds as directed.

5. In case of a bequest of the whole personal estate (or the residue after payment of debts, etc.) to one person for life, with remainder to others, the general rule is, that the *whole* property must be converted into money, and invested in permanent securities, and the *income* only paid to the legatee for life.

6. But if it can be gathered from the will that the testator intended the legatee for life to enjoy any part of the property in its then condition, the bequest is so far *specific*, although such property is not particularly designated in the will.

7. In this case the direction to sell the property *after* the death of the widow, shows an intent that she possess and enjoy for life, *in specie*, all that part of the property capable of being so possessed and enjoyed and then sold; i. e., of *personal chattels* as distinguished from *choses in action*.

8. Such personal chattels being transferred to or left in the possession of the widow, the executor or administrator will not be liable for them during her lifetime.

9. If the widow dies possessed of such personal chattels, the executor must resume possession, and sell them for the benefit of the other legatees.

10. If the widow sells or destroys such personal chattels in her lifetime, the remedy of the other legatees is against *her* personal representative, and *not* against the executor of her deceased husband.

11. Where the widow, in such a case, is one of the executors, the possession of the personal chattels by her co-executor is *her* possession; and such possession, by operation of law, immediately vests in her *as legatee* — that of the executors, as such, being divested.

12. A subsequent sale of such chattels by the co-executor for the widow's benefit, must be treated as made by him *as her agent*, and not as executor. No recovery, therefore, can be had on his bond for the value of such chattels.

13. It is proper for the executor to take from the legatee for life a *receipt* for the personal chattels specifically bequeathed; but *it seems* that a failure to do so is not a breach of his bond; especially where such legatee is also co-executor.

14. The *choses in action* belonging to the estate are held *not* to have been bequeathed by the will above described.

15. It was therefore the duty of the executors to *collect* the notes and other

contracts to pay money; as they became *due*, and to *sell* the railroad stock belonging to the estate, to invest the proceeds in permanent securities, and to pay over the interest accruing therefrom, to the legatee for life; and, after her death, it was the duty of the surviving executor to sell such securities, and distribute the proceeds to the other legatees.

16. If the executors in good faith sold the railroad stock for its then market value, they are chargeable only with such value, and not for the highest amount which it would have brought at some subsequent period during their administration.

17. In stating the executor's account, he should be allowed a reasonable sum for the support of the widow before probate of the will.

18. After excepting the provisions of the will in her behalf, and entering upon their enjoyment, the widow could have no further provision for her support out of the estate.

APPEAL from the Circuit Court for *Dane* County.

On the 5th of April, 1861, William Potts, of Walworth county, died, leaving his last will and testament duly executed, in and by which, he appointed his wife, Mary Potts, and one Edson Kellogg, executrix and executor thereof. After directing that his just debts, funeral charges, and the expense of settling the estate, should be paid out of the estate of the testator, the will contains the following clause:

"*Item.* I devise and bequeath unto my beloved wife, Mary Potts, all my property and estate, real, personal and mixed of every description whatever, with the rents, issues and profits thereof, for and during the time of her natural life, to be used and enjoyed by her; and from and after the decease of my said wife, my will is that the said property shall be sold as soon as convenient, and be converted into money and disposed of as follows:

"*Item.* I devise and bequeath to the American Baptist Free Mission Society, out of the avails of said property, the sum of one thousand dollars, to be by them expended as they shall deem best.

"*Item.* I devise and bequeath all the residue of said property, to my beloved grand-children, who shall survive my said

wife, to be equally divided among them, share and share alike, and shall arrive at the age of twenty-one years."

The will was duly presented and admitted to probate in the Walworth county court, June 3d, 1861, and the executrix and executor therein named duly qualified as such, and entered upon the discharge of their duties. The defendant and one P. H. Brady became sureties in the bond given by the executrix and executor, which bond is substantially in the form prescribed by sec. 2, ch. 98, R. S. It seems that Brady died before this action was commenced.

The executor and executrix returned an inventory of the estate to the county court, as required by law, from which it appears that the estate consisted of a house and lot in White-water, appraised at $800, of certain promissory notes against different persons, amounting to $782.50, a land contract on which there was due $400, and certain personal chattels appraised at $158, amounting in all to the sum of $2,140.50. A plow and a few shares of railroad stock, belonging to the estate, were omitted from the inventory. The personal property and the proceeds thereof, seems to have been in the hands of Mr. Kellogg, who sold the chattels and made collection of the notes and land contract, and out of the proceeds paid debts, funeral charges and expenses of administration, and supported Mrs. Potts until her decease, which occurred August 31, 1864. It seems from the evidence, that Mr. Kellogg paid for such support, an amount greater than the whole income of the estate and the proceeds of the personal chattels sold by him.

No account of the administration was ever rendered to the county court, but in March, 1865, Mr. Kellogg was duly cited by the county judge to render such account, but never did so. In October, 1865, Mr. Kellogg died. Before his death he disposed of the lot and house in Whitewater, and the Mission Society, named in the will, accepted the proceeds of such sale in full payment and satisfaction of the legacy to that society.

In 1866, on the petition of one of the grand-children of the

testator, N. S. Murphy, Esq., was appointed by the Walworth county court, administrator *de bonis non* of said estate, and duly qualified as such. Being unable to find any property of the estate, the administrator, by leave of the county judge, brought this action upon the bond before mentioned, assigning in the complaint several breaches thereof, and alleging that the executors aforesaid converted and wrongfully applied to their own use property belonging to the estate, of the value of nearly five thousand dollars.

The action was tried before the Hon. H. S. Conger, referee, who found that Mr. Kellogg, at the time of his death, was indebted to the estate of Wm. Potts, as executor, in the sum of $1,036.41. The circuit court modified the report by allowing the plaintiff interest on that sum from the date of the death of Mrs. Potts; gave judgment against the defendant for the penalty of the bond, and awarded execution for the sum found by the referee, and interest thereon as aforesaid. All material facts in the case, not stated above, will be found in the opinion.

The defendant has appealed from such judgment to this court.

*Page & Montague*, for appellant.

*N. S. Murphy, contra.*

LYON, J. This case has been before this court on a former occasion, on an appeal from the order of the circuit court sustaining a demurrer to the complaint. It was then held by this court that the complaint states facts sufficient to constitute a cause of action. 23 Wis., 251. The allegations of the complaint are there sufficiently stated, and need not be repeated here. The questions decided upon that appeal must be considered as settled. Hence it is *res adjudicata*, so far as this case is concerned, that the complaint states a cause of action, and that the action is properly brought by the administrator *de bonis non*, in the name of the county judge.

One condition of the bond upon which the action is predi-

cated, is, that the principals therein should render a true and just account of their administration to the county court, or the judge thereof, within one year from the date of the bond, and at such other times as the court might require. No such account was ever rendered by the executor and executrix, or either of them. Their failure to do so is a breach of the condition of the bond, for which this action can be maintained.

It becomes, therefore, quite unnecessary to inquire whether other conditions of the bond have been broken also.

The action having been properly brought in its present form, and there having been a clear violation of one of the conditions of the bond, the judgment for the penalty named therein was properly rendered. Taylor's Stats., 1653, § 20.

The important question in the case, is whether the judgment awards execution for the sum for which the defendant is legally liable by virtue of the conditions of the bond. This question involves an inquiry as to the correctness of the account of the executors, stated by the referee, and confirmed by the circuit court.

The referee charged the executors, or the executor Kellogg, with the amount of the inventory of personal property, being $1,340.50, the interest paid to Kellogg on the notes and land contract mentioned in the inventory, but which interest is not included therein, $313.60, the railroad stock not inventoried $326, cash received for plow not inventoried, $2.50, and for old iron $1. Total $1,983.60.

He allowed the executor as follows:

| | |
|---|---:|
| For funeral expenses of testator | $128.00 |
| Debts of the testator | 106 59 |
| Expenses in county court | 12 65 |
| For the support of Mrs. Potts during the settlement of the estate. | 600 00 |
| For services as executor | 100 00 |
| | $947 24 |

Leaving a balance against the executor of $1,036,36. To this sum the circuit court added simple interest at seven per cent.

from the death of Mrs. Potts, and awarded execution for the amount of such sum and interest.

The proofs show that Mrs. Potts used considerable more than $600, of the estate, for her support after the death of the testator, and the allowance of that sum, by the referee, was probably made upon the ground that she was only entitled to the income of the estate under the will. A computation will show that the interest on the value of the whole estate charged by the referee to the executor, from the time of the decease of the testator, to the decease of Mrs. Potts, amounts to nearly or quite $600. It further appears · that Mr. Kellogg sold the railroad stock for sixty dollars, which sum was, at the time of such sale, the full market value thereof, but that the stock afterwards, and for a short time, was worth in the market, the sum charged therefor in the account, to-wit—$326 and more.

In order to determine whether the referee and the circuit court have stated this account upon correct principles, it is necessary to ascertain what were the legal rights of Mrs. Potts as a legatee under the will.

By the terms of the will, all of the property of the testator, real, personal and mixed, of every description whatever, which should remain after paying debts of the testator, funeral charges and expenses of administration, together with the rents, issues and profits thereof, was bequeathed to Mrs. Potts for life. The will then directed, that after her decease said property should be sold and the proceeds thereof distributed as therein directed, to the American Baptist Free Mission Society and to the grandchildren of the testator.

There is no ambiguity in these provisions of the will, and their effect is to give Mrs. Potts a life estate in the property, with remainder to the personal representatives of the testator, in trust, to sell the same after the decease of Mrs. Potts, and to pay over the proceeds thereof as directed in the will. Such was clearly the intent of the testator, and that intent, being consistent with the rules of law, must prevail. *Smith v. Bell*, 6 Peters,

68; *Boyd v. Strahan*, 36 Ill., 356; *Bradley v. Wescott*, 13 Ves., 445; *Siegwald v. Siegwald*, 37 Ill., 430.

The real estate of the testator was sold by the surviving executor, after the death of Mrs. Potts, and the proceeds thereof applied in accordance with the provisions of the will, and we have only to determine the duty and liability of the executors in respect to the personal property bequeathed to Mrs. Potts for life.

The general rule is, that where there is a bequest of the whole of the testator's personal estate, or of the residue thereof after the payment of debts, expenses of administration and legacies, to one person for life, with the remainder to others after the termination of the life estate, the whole property must be converted into money, and invested in permanent securities, by the executor, and the income only paid to the legatee for life. But if it can be gathered from the will that the testator intended that such legatee for life should enjoy the property in its then condition, the bequest is specific, and the legatee is entitled to the possession and enjoyment of the property thus specifically bequeathed, although the bequest be made in general terms, and without any particular designation of the property. The authorities, both in England and this country, which assert this doctrine, are very numerous, and the law as here stated is well settled. Reference to a large number of these cases will be found in the notes to *Howe v. The Earl of Dartmouth*, (7 Ves., 137,) in 2 Leading Cases in Equity, 262. See also *Healey v. Toppan*, 45 N. H., 243, and cases cited; *Morgan v. Moran*, 14 Beavan, 72.

In the present case the will expressly gives to the legatee for life the use and enjoyment of the property, and, by directing that it be sold after her death, the testator evidently intended that it should not be sold before her death, but that she should have the possession and use of it during her life. It necessarily follows that in respect to the property which was of a character to be possessed, used, enjoyed and sold, that is, the per-

sonal chattels as distinguished from the choses in action, the legacy is specific, and Mrs. Potts was entitled to the possession, use and enjoyment of such chattels *in specie*, during her life. This proposition is conceded to be correct in the brief of the counsel for the plaintiff.

Had Mr. Kellogg been sole executor, and had he delivered those chattels to Mrs. Potts, his liability therefor, as executor, at least so long as she lived, would have been terminated, because in that case, he would have disposed of the property precisely in accordance with the direction of the testator and the requirements of law. Had Mrs. Potts died possessed of the property, it would doubtless have been his duty, as executor, to resume possession of it, and to have sold it for the benefit of the other legatees, but while she lived, he would have had no further control over it, and could not be held liable, as executor, on account of it. Again — had Mrs. Potts sold or destroyed the property after it came into her possession, the remedy of the legatees in remainder would not be against Mr. Kellogg, as executor, or upon his bond, as such, but against the personal representatives of Mrs. Potts after her death. *French v. Hatch*, 8 Foster, 331 ; *Wescott v. Cady*, 5 John. Ch. 334 ; 2 Leading cases in Equity, 535, (note).

In this case, the legatee for life was executrix of the will, and the possession of the property by her co-executor, was her possession, and we think that such possession immediately vested in her, by operation of law, as legatee—that of the executors, *as such*, being thereby divested—and that the subsequent sale thereof by Mr. Kellogg, and the payment of the proceeds to her, were not the acts of Mr. Kellogg as executor, but rather as agent of the legatee for life.

If these views are correct, it seems to follow that no action can be maintained upon the bond of the executors, for the proceeds of the sales of such chattels as were specifically bequeathed to Mrs. Potts for life.

It is true that some of the cases hold that it is the duty of

the executor to take a receipt for the property from the legatee for life, specifying therein the estate which the latter has in the property, and this is doubtless the proper mode in which to transact the business, but we do not find that it has ever been held that a failure to take such receipt will render the executor liable upon his bond for the value of such property.

We perceive no good reason for holding that such liability exists by reason of a failure to take the proper receipt from the legatee for life, especially when such legatee is also an executor.

We conclude, therefore, that there can be no recovery upon the bond of the executors, for the value of the property specifically bequeathed to Mrs. Potts for life.

We find nothing in the will to evidence an intent on the part of the testator to make a specific bequest of the choses in action which constituted the bulk of his personal estate. Such property, from its very nature, does not admit of use, enjoyment and sale in the sense in which those terms are evidently used in the will. As to these, the bequest to Mrs. Potts for life is general and not specific. Under the authorities above cited, it is quite impossible to give any other construction to the will in this behalf. Hence the general rule before stated is applicable, and it was the duty of the executors to collect the notes and the sums unpaid on the land contract described in the inventory, and to sell the railroad stock; to invest the whole proceeds thereof in permanent securities; to pay over the interest accruing thereon to the legatee for life; to retain such securities for the benefit of the legatees in remainder; and after the death of the legatee for life, it was the duty of the surviving executor, Mr. Kellogg, to convert such securities into money and distribute the proceeds as directed by the will.

The failure of the executors, and of Mr. Kellogg, after the death of Mrs. Potts, to perform these duties, or the most of them, is an additional breach of the conditions of their bond.

As regards the railroad stock, it has already been said that

it was the duty of the executors to convert it into money, and they having sold it at its then market value, and given the estate credit for the proceeds, we know of no principle upon which the surety in their bond can be held chargeable for a greater sum than the stock was sold for. It is very evident that this stock was inadvertently and inaccurately omitted from the inventory, and that it was disposed of in due course of administration, and in entire good faith, and there is no evidence of any conversion or attempted conversion, of the proceeds by either of the executors, or of any conduct on their part in respect thereto, which will justify an allowance to the plaintiff of any greater sum for the stock than it was sold for by Mr. Kellogg.

We must hold, therefore, that the defendant is liable on the bond for the principal of the notes, and land contract included in the inventory and collected by the executors, and for $60, the proceeds of the railroad stock.

It follows, from the foregoing views, that in the account which must be stated in order to determine the amount for which the defendant is liable on his bond, the debit side should be as follows:

Principal of notes and land contract belonging to the estate, as per inventory ................................................ $1,182 50
Proceeds of railroad stock.................................... 60 00

$1,242 50

From this amount, deductions should be made as follows:

1st. For the support of the widow from the time of the testator's death, until the will was admitted to probate, being a period of about two months. We think that fifty dollars is a reasonable allowance therefor. Mrs. Potts having accepted the provisions made for her in the will, and having, immediately after the probate thereof, entered into the possession and enjoyment of the real and personal estate bequeathed to her for life, we do not think that any further provision can be properly made for her support out of the estate.

2d. The referee allowed for funeral expenses $43. But this sum is so obviously less than what must have been the actual cost of the testator's funeral, we are constrained to think that an item of $34, charged in Mr. Kellogg's account as being paid for that purpose, was inadvertently omitted by the referee, and should be allowed. There must be allowed, therefore, $77 for funeral expenses, and in addition thereto, $85 for a monument to the memory of the testator, which last sum was allowed by the referee.

3d. Debts of the testator paid by the executors, $105.59, and expenses of administration paid by them, $12.65. These items were also allowed by the referee, and concerning them there is no controversy.

4th. The referee allowed $100 for Mr. Kellogg's services as executor. Under the circumstances of this case, we think this a fair allowance. Certainly, we cannot increase it.

5th. The referee omitted the following items paid by and due to Mr. Kellogg, which were satisfactorly proved, and should have been allowed:

| | | |
|---|---:|---:|
| Paid for lumber for fence and repairs of roof of house | $24 | 72 |
| Taxes of 1863 on real estate | 9 | 60 |
| Taxes of 1864 on real estate | 15 | 40 |
| Services of Mr. Kellogg as attorney for the testator in the case of Potts v. Dutton | 20 | 00 |
| | $69 | 72 |

The credit side of the account will thus stand as follows:

| | | |
|---|---:|---:|
| For the support of the widow for the period above indicated | $50 | 00 |
| Funeral expenses and monument | 162 | 00 |
| Debts of testator | 105 | 59 |
| Expenses of administration | 12 | 65 |
| Mr. Kellogg's services | 100 | 00 |
| Omitted items as above | 69 | 72 |
| Total | $499 | 96 |

The amount of these credits deducted from the above sum of $1,242.50, leaves a balance of $642.54, for which the defendant is liable on his bond.

It was the duty of Mr. Kellogg to pay over this balance to the parties entitled thereto under the will, as soon as he could convert the securities, in which the same were or ought to have been invested, into money, after the death of Mrs. Potts. The legatees were also entitled to the interest accruing thereon after her death.

We are of the opinion, therefore, that simple interest at seven per cent. should be allowed on such balance, against the defendant from the date of the report of the referee, that is to say, from August 31st, 1864 to January 14th, 1871; and for the amount of such balance and interest, with interest thereon from the latter date to the date of the payment thereof, execution should be awarded.

The formal judgment for the penalty of the bond must be affirmed, but the judgment or order specifying the sum justly due thereon, and awarding execution for such sum, is reversed, and the cause must be remanded to the circuit court, with directions to award execution for $929.26, and costs in that court, with interest thereon at seven per cent. from January 14th, 1871.

The appellant must recover costs in this court, for the reason that he substantially prevails upon his appeal. Taylor's Stats., 1644, § 41.

*By the Court.* — So ordered.