SCHREINER *v.* SMITH *et al.*

(*Circuit Court, N. D. Illinois.* May 13, 1889.)

WILLS—CONSTRUCTION—LIFE-ESTATE—POWER OF DISPOSITION.

    A testator devised all of his estate, real and personal, to his wife, "to have and hold during her natural life, unless she should again marry, in which case she shall thereafter forfeit all right to said personal estate that may remain,, and all right to the real estate or the proceeds thereof.  *  *  *  The personal estate before such remarriage, she may dispose of as her necessities may require, or as her judgment may dictate to be right and expedient. : In case it should at any time be deemed of pecuniary advantage to sell my homestead,

she is hereby authorized and empowered to sell and convey the same, and invest.the proceeds thereof in another homestead or in interest-bearing securities, and have the use of said proceeds of sale during her natural life, unless she should remarry, at which time she shall forfeit all right thereto. In case of her remarriage or death, it is my will that all my estate personal that may remain unexpended by my wife, as also my real estate, or the proceeds thereof, in case the same shall have been sold and conveyed, and the proceeds reinvested as aforesaid, * * * shall be equally divided among the children of my brothers of full blood." *Held,* that the wife took the personalty with full power of disposition.

In Equity. Bill for an accounting.
*A. R. Bushnell,* for complainant.
*J. L. High,* for defendants.

BLODGETT, J. This is a bill filed by complainant as administrator *de bonis non* with the will annexed of the estate of Dr. Jehiel H. Hyde, to compel an accounting from defendants for certain moneys alleged to belong to said estate now in the possession or control of the defendants.

The material facts, as they appear from the pleadings and proofs, are: Dr. Hyde died at Lancaster in Grant county, Wis., on the 7th of December, 1869, leaving a will executed November 20, 1869, by which he devised all his real and personal estate, after payment of his debts, to his wife, Sarah Hyde, to have and to hold during her natural life, naming Addison Burr as executor. The will was duly probated in Grant county, Wis., which was the domicile of the testator, by the executor named therein, and letters testamentary issued to him in January, 1870; and on the final settlement of the accounts of the executor on the 12th of August, 1872, there remained in his hands, after payment of debts and legacies, the sum of $7,313.61 in money or securities, which he, by the order of the court, turned over to the possession of Mrs. Sarah Hyde, the widow of the testator, pursuant to the provisions of the will. The only real estate belonging to the testator seems to have been his homestead, situated in the town of Lancaster, and this the widow occupied, either by leasing it and receiving the rents, or by residing therein, and no question arises in this case in reference to the real estate. Dr. Hyde left no child or children, but he and his wife had taken into their family, when quite young, a niece of Mrs. Hyde, who was supported and educated by them as a foster-child, and who is one of the defendants in this case, she having married the other defendant, C. Stoddard Smith, a few months prior to Dr. Hyde's death; and after the death of the testator, Mrs. Hyde lived, most of the time until her own death, with the Smiths. After the death of Dr. Hyde, Mrs. Hyde gave to the defendant Mrs. Julia Smith the sum of $1,000 to aid her in buying a lot on which to build a house in Springfield, Ill. The proofs also show that Mrs. Smith received from Mrs. Hyde, from time to time, after Dr. Hyde's death, various small sums of money, amounting in all to about $500, or between four and five hundred dollars. Some time about the middle of August, 1879, the money received by Mrs. Hyde from her husband's estate had been reduced to the sum of $5,000, which had been loaned to one T. M. Barber, for which she had received as security the deed of a farm in Grant county,

Wis., but Barber became insolvent, and failed to pay the interest, and Mrs. Hyde expected to be obliged to take the farm in satisfaction of her loan. She was very anxious to return to Lancaster to reside there the rest of her life, and that the Smiths, who at that time were living in Orange, New Jersey, should go there with her, so that she could live with them, and be among her old friends and neighbors; and to induce Dr. Smith to change his business plans and return to Lancaster she proposed to deed to him the Barber farm, for which the Smiths were to pay her the sum of $400 per annum, and allow her to have her home in their family, if she chose to do so. This proposition was accepted by the Smiths, and an agreement in writing to that effect executed between the parties, and a deed made by Mrs. Hyde to Mrs. Smith of the Barber farm, and soon afterwards the Smiths and Mrs. Hyde returned to Lancaster, where they lived in the old homestead until after the death of Mrs. Hyde, they paying her the $400 each year, and she living in their family. Soon after the return to Lancaster some disposition was made of the Barber farm so that the $5,000 loan was paid, and Mrs. Hyde, as the deed to Mrs. Smith had never been put on record, reconveyed the farm to Barber, or his assigns, and the $5,000 went into the hands of the Smiths, and has from that time forward been treated as their own. The proof also shows that after the return to Lancaster, and after the payment of the money loaned to Barber by Mrs. Hyde, the first agreement between Mrs. Hyde and the Smiths was canceled and a new agreement made at about the time this Barber loan was paid, which, as I gather from the testimony, substantially embodied the terms of the old agreement, though, perhaps, with less minuteness of recital of circumstances. Complainant now claims that he is entitled, as administrator *de bonis non* of Dr. Hyde, to receive from the defendants all the money they have received from Mrs. Hyde since Dr. Hyde's death; that is, the $500 given Mrs. Smith by Mrs. Hyde in small sums from time to time, the $1,000 given her to help buy the lot for a house in Springfield, and the $5,000 received from the Barber loan; while on the part of the defendants it is contended that the will of Dr. Hyde gave Mrs. Hyde full power of disposition of the personal property belonging to the estate, and that her disposition of these sums of money is final, and cannot in any way be challenged by the complainant.

As to this $500 item, the proof shows that $225 of it was the proceeds of a piano which Dr. Hyde had in his life-time given to Mrs. Smith before her marriage, and which he had, however, sold, telling her at the time he sold it that she should either have the money or a new piano, and Mrs. Hyde, in recognition of the claim of Mrs. Smith to the proceeds of the piano, had paid her the sum of $225 on that account. The balance of this $500 item, I have no doubt from the proof, was a part of the income which Mrs. Hyde received from the money which she had loaned out, and was given undoubtedly as presents to Mrs. Smith, who stood in the relation of a daughter to her. She was making her home with the Smiths, and these presents seem to have been the only attempt at remuneration for their kindness and hospitality to her. If paid from

the income of the money paid over to Mrs. Hyde by the executor, I have no doubt that it was rightfully paid by Mrs. Hyde, and can in no sense be considered any part of the residuary estate. As to the $1,000 given to buy the lot in Springfield, the proof shows that it was given Mrs. Smith in 1874. No note or writing of any kind obligating Mrs. Smith or her husband to repay it was ever taken, and I think it clear from the proof that Mrs. Smith considered it a gift from her aunt and foster-mother, and both parties so treated it; but, whether a gift or not, all right of action in regard to this item is, I think, barred by the statute of limitations, as it was received over 11 years before Mrs. Hyde's death.

The main contention, however, in the case is in regard to the $5,000 constituting the Barber loan, and which Mrs. Hyde gave to the Smiths, in consideration of their paying her $400 per annum during her natural life. The complainant's right to this, and also to the other sums claimed, depends upon the construction to be given to the will of Dr. Hyde. Complainant contends that the will only gave Mrs. Hyde a life-estate in the money and personal property of the testator, while, as I have said before, it is contended on the part of defendants that the will clothed Mrs. Hyde with full power to dispose of the personalty, and that the will does not give Mrs. Hyde a mere life-estate in the personalty, with the remainder over to the residuary legatees.

The clauses of the will material to the question are:

"(2) I give, devise, and bequeath to my wife, Sarah Hyde, all of my estate, real and personal, to have and hold during her natural life, unless she should again marry, in which case she shall thereafter forfeit all right to said personal estate that may remain, and all right to the real estate or the proceeds thereof; * * * the personal estate, before such remarriage, she may dispose of as her necessities may require, or as her judgment may dictate to be right and expedient. In case it should at any time be deemed of pecuniary advantage to sell my homestead, she is hereby authorized and empowered to sell and convey the same, and invest the proceeds thereof in another homestead or in interest-bearing securities, and have the use of said proceeds of sale during her natural life, unless she should remarry, at which time she shall forfeit all right thereto. In case of her remarriage or death, it is my will that all my estate personal, that may remain unexpended by my wife, as also my real estate, or the proceeds thereof, in case the same shall have been sold and conveyed and the proceeds re-invested as aforesaid, * * * shall be equally divided among the children of my brothers of full blood."

Complainant insists, as I have already said, that this will only clothed Mrs. Hyde with a life-estate in the personalty, with the remainder over, at her death or remarriage, to the residuary legatees and relies for this construction mainly upon *Golder* v. *Littlejohn*, 30 Wis. 344; *Jones* v. *Jones*, 66 Wis. 310, 28 N. W. Rep. 177; *Brant* v. *Iron Co.*, 93 U. S. 326; *Bradly* v. *Westcott*, 13 Ves. 445; *Smith* v. *Bell*, 6 Pet. 68; and *Giles* v. *Little*, 104 U. S. 291. It is sufficient, I think, to say that neither of the wills in controversy in these cases contains the peculiar phraseology adopted by the testator in this case. Neither of these wills gave any right of disposition to the widow or legatee for life, but simply gave what the court considered to be a mere life-estate in the personalty, with strict remainder

over to the residuary legatees. In this case, the will gives to Mrs. Hyde the right to dispose of the personalty "as her necessities may require, and as her judgment may dictate to be right and expedient." . And this clause seems to me to clothe Mrs. Hyde with the full power of disposition of the personalty, so that any disposition which she makes of the personalty during her life-time is absolute and binding upon the residuary legatees. Not only does the clause which I have just quoted in express terms give this right of disposition, but the clause in regard to the residuary disposition of the estate is: "It is my will that all my estate personal that may remain unexpended by my wife, as also my real estate, shall go to the residuary legatee;" clearly showing an intention on the part of the testator to give an absolute right of disposition of the personalty to Mrs. Hyde, and that only so much of it as remained absolutely unexpended, or, as you may say, undisposed of, should go to the residuary legatees. So, too, I think much force is given to the construction which I am disposed to give to this will, from the manner in which he provides for the use of the real estate, which is that, in event that Mrs. Hyde should see fit to sell the homestead, she was "authorized and empowered to do so, and invest the proceeds thereof in another homestead, or in interest-bearing securities," and to have the use of such proceeds of sale during her natural life; thus clearly showing that there was a definite intention in the mind of the testator to give Mrs. Hyde only a life-estate in the homestead, or in the proceeds of the homestead, if sold, while the language in regard to the personalty, in marked contrast, clothes her with full disposing power. The will under consideration is, in the particulars now in question, much more analogous to the will construed in *Williams* v. *Pounder*, by the high court of justice, chancery division, in England, as reported in 19 Chi. Leg. N. 247, where the language of the will was:

"I give all the residue of my estate and effects * * * unto my said wife, for her own absoute use, and benefit, and disposal; * * * and in case, at the time of the decease of my said wife, all, or any part, or parts of the said residue * * * shall remain undisposed of by my said wife, * * * unto my said brother," etc.

In construing this will the court said:

"I must read the codicil as conferring a life-estate on the wife, together with the power of disposition, and in default of the exercise of that power, gives over what remains at her death to other persons. * * * I think that the testator intended to give her the power of disposition by act *inter vivos.*"

It seems very clear to me that if Mrs. Hyde, after receiving the personalty from the executor of her husband's estate, had taken the same and bought an annuity with it, it would have been such a disposition as was contemplated, or allowable, under the terms of the will, and in the disposition which she did make of the $5,000 in August, 1879, she, in effect, stipulated for the payment of an annuity of $400 during her natural life, and the Smiths obligated themselves to make such payment; Mrs. Smith securing the same by making a will contempora-

neously with this agreement, by which she provided for the payment of this $400 per annum out of her estate, in case of her death before the death of Mrs. Hyde. At the time this agreement was made, Mrs. Hyde was between 60 and 70 years old. She was liable to live yet many years, and at the same time liable to die within a short time. The Smiths took all the chances of a long life, or a possible short continuance of her life, and bound themselves to pay her this annuity of $400 per year. It was a natural arrangement for an old lady, situated as she was, to make. She had been unfortunate in the loan to Barber, and was subjected to great vexation, annoyance, and inconvenience by reason of Barber's failing to pay his interest. Her relations to Mrs. Smith were such that she felt confident that Mrs. Smith would see that she was provided for; that she had her annuity, and was exercising a judicious caution in not binding herself to be at all times a member of the Smith family, but provided for an annuity, with the privilege of living in the family if she chose to do so, thereby leaving herself free to live elsewhere, and enjoy her income, if circumstances should afterwards make it more desirable for her to do so. I may also add in regard to the gifts made by Mrs. Hyde to Mrs. Smith that, even if these cannot be supported upon the grounds on which I have already disposed of them, they clearly come within the disposing power of the will, and evidently, if the $1,000 claim is not fully answered by the statute of limitations, by reason of its being trust funds, or for any other reason, it was clearly within the power of Mrs. Hyde to dispose of this money as she did. She was interested in Mrs. Smith as her foster-daughter; was making her home with her. It was desirable that Mrs. Smith should have a home, and Mrs. Hyde saw fit in her "judgment" to contribute to the purchase of the home for her. With this view of the true construction to be given this will, I must dismiss the complainant's bill for want of equity.