UNITED STATES v. WILSON.

(District Court, N. D. California. November 28, 1893.)

No. 2,978.

1. POST OFFICE—OBSCENE SEALED LETTERS.
   The mailing of an obscene, private, sealed letter is not within the prohibition of Rev. St. § 3893, as amended September 26, 1888, by the insertion of the word "letter," for all the words of enumeration are limited in character by the concluding words, "or other publication." U. S. v Chase, 10 Sup. Ct. 756, 135 U. S. 255, applied; U. S. v. Martin, 50 Fed. 918, disapproved.

2. STATUTES—CONSTRUCTION—VIEWS OF LEGISLATORS IN DEBATE.
   While the courts cannot recur to the views expressed by individual members in debate, for the purpose of ascertaining the intention of congress, they may yet advert to statements made by such members, as part of the history of the times, and for the purpose of meeting an objection that a word used could have no operation at all, if it were not given a certain meaning contended for.

At Law. Indictment of F. L. Wilson for mailing an obscene letter inclosed in a sealed envelope in violation of section 3893, Rev. St., as amended. Heard on demurrer and motion to quash. Demurrer sustained and indictment quashed.

Charles A. Garter, U. S. Atty.
Lorenzo S. B. Sawyer, for defendant.

MORROW, District Judge. This is an indictment for "depositing," etc., "in a post office of the United States, a certain lascivious, obscene, and indecent letter, inclosed in a sealed envelope," found under section 3893 of the Revised Statutes, as amended by act of September 26, 1888. To this indictment the defendant demurs on the ground that it states no offense against the laws of the United States. It is contended on behalf of the defendant that a strictly private, sealed letter is not included among the inhibitions of section 3893, Rev. St., as amended.

The United States attorney opposes this view, and maintains that the congress, when it amended this section in 1888 by inserting the word "letters," intended to and did cover just such a case as this. The offense charged is statutory, and the determination of this question depends upon the construction to be given to the statute upon which the indictment is based. It will be necessary, therefore, to refer to the legislation upon the subject. The act of March 3, 1865, (section 16,) provided that "no obscene book, pamphlet, picture, print or other publication of a vulgar and indecent character shall be admitted to the mails," and punishment was provided for the violation of this section. The act of June 8, 1872, (section 148,) added to the prohibited matter "any letter upon the envelope of which, or postal card upon which, scurrilous epithets may have been written or printed," and prescribed a penalty for the deposit of any "such obscene publications." In the act of March 3, 1873, the words "paper" and "writing" first appear. The title of this act was "An act for the suppression of trade in, and circulation of obscene literature and articles of immoral use." The second section of this act provides that "no obscene book, pamphlet, picture, paper, print, or other publication," etc., "shall be mailable." This section was revised by the act of July 12, 1876, and the word "writing" inserted in the list of nonmailable publications. In incorporating this act into the Revised Statutes, its several sections were separated and classified. Section 1 became section 5389; section 2, section 3893; section 3, section 2491; section 4, section 1785; and section 5, section 2492,—of the Revised Statutes. These separated sections serve to explain the meaning of the original statute. In the original act, section 1 alone contained a full list of the prohibited articles, the other sections referring to it. The repetition of the words in the separate section, therefore, did not render non-mailable anything not made so by the original act. On September 26, 1888, congress amended section 3893 by inserting the word "letter" between the words "paper" and "writing," leaving the words "or other publications" as they stood. Before this last amendment the decisions of the United States circuit and district courts were about equally divided upon the proper construction of the statute.

In the following cases it was held that a message or communication in writing from one person to another, of the character known as a "letter," was a "writing," within the meaning of the statute; U. S. v. Gaylord, 17 Fed. 438; U. S. v. Hanover, Id. 444; U. S. v. Britton, Id. 731; U. S. v. Morris, 18 Fed. 900; U. S. v. Thomas, 27

Fed. 682. In the following cases the courts held that a private letter did not come within the prohibition of the statute: U. S. v. Williams, 3 Fed. 484; U. S. v. Loftis, 12 Fed. 671; U. S. v. Comerford, 25 Fed. 902; U. S. v. Mathias, 36 Fed. 892; U. S. v. Huggett, 40 Fed. 636. The question was settled by the supreme court of the United States in U. S. v. Chase, 135 U. S. 255, 10 Sup. Ct. 756. This case arose under the act of 1876, but was decided April 28, 1890, or more than a year after the amendment of September 26, 1888. The opinion expressly refers to that amendment, and, while only deciding the case at bar, lays down the rule of construction that must govern this court in construing the amendment of 1888. "In the statute under consideration," says the supreme court in this case, "the word 'writing' is used as one of a group or class of words,—book, pamphlet, picture, paper, writing, print,—each of which is ordinarily and prima facie understood to be a publication; and the enumeration concludes with the general phrase. 'or other publication,' which applies to all the articles enumerated, and marks each with the common quality indicated. It must, therefore, according to a well-defined rule of construction, be published writing which is contemplated by the statute, and not a private letter, on the outside of which there is nothing but the name and address of the person to whom it is written. * * * The statute prohibits the conveyance by mail of matter which is a publication before it is mailed, and not such as becomes a publication by reason of its being mailed."

This decision declares clearly and distinctly two rules of construction for this statute: First, the phrase "or other publication" applies to and qualifies all the preceding enumerated articles; second, the statute prohibits the conveyance of mail matter which is a publication before it is mailed, and not such as becomes a publication by reason of its being mailed.

These rules appear to be as applicable to the statute as amended by the insertion of the word "letter" as before. Indeed, the amendment was before the court, and is referred to in the decision. It is not, therefore, a case where congress has amended a statute to cure a defect pointed out by the supreme court, but where the court has rendered a decision prescribing rules of construction for an original statute with an amendment before it that would come within such rules. In the case of U. S. v. Clark, 43 Fed. 574, these rules were accordingly construed as applicable to the amended statute as they were to the statute before amended. On the other hand, in the case of In re Wahll, 42 Fed. 822, it was held that congress had by the amendment clearly expressed its intention to exclude obscene letters, whether private and sealed or unsealed; but the letter in that case is described as "written on four several sheets or pieces of paper, on each of which were illuminated, comical pictures, commonly known as and called 'comic valentines,' and then and there containing and consisting of indecent, obscene, lewd, and lascivious delineations, epithets, terms, words, and writing." This letter appears to have been a publication before it was deposited in the

mails as a private letter, and therefore within the express terms of the statute. This last case was followed in U. S. v. Martin, 50 Fed. 918, where the letter was unquestionably a private letter.

I do not feel authorized in following these last decisions, in view of the grounds upon which the supreme court placed its decision in U. S. v. Chase, supra, and the well-known rules of interpretation prescribed for criminal statutes, and so clearly stated by Judge Dillon in U. S. v. Whittier, 5 Dill. 35. "Statutes creating crimes," says that learned judge, "will not be extended by judicial interpretation to cases not plainly and unmistakably within their terms. If this rule is lost sight of, the courts may hold an act to be a crime when the legislature never so intended. If there is a fair doubt whether the act charged in the indictment is embraced in the criminal prohibition, that doubt is to be resolved in favor of the accused. U. S. v. Morris, 14 Pet. 464; U. S. v. Wiltberger, 5 Wheat. 76; U. S. v. Sheldon, 2 Wheat. 119; U. S. v. Clayton, 2 Dill. 219." The case of U. S. v. Chase may again be referred to as applying this rule to the statute under consideration. The court there says:

"We recognize the value of the rule of construing statutes with reference to the evil they were designed to suppress as an important aid in ascertaining the meaning of the language in them which is ambiguous, and equally susceptible of conflicting constructions. But this court has repeatedly held that this rule does not apply to instances which are not embraced in the language employed in the statute, or implied from a fair interpretation of its context, even though they may involve the same mischief which the statute was designed to suppress."

The district attorney urges, however, that if the word "letter," as it now stands in the statute, does not include all private communications of an objectionable character, then there is nothing for it to operate upon, since all other mail matter is reached by the other enumerated articles described in the statute before the amendment. In reply to this objection, it may be said that, at the time the amendment was under consideration in the senate, Senator Vest, who had charge of the bill, stated that it was intended to reach a certain class of objectionable publications. He said, among other things:

"The present law does not reach the case of written publications. It only applies to print. These scoundrels went to work, and used the new stylograph process frequently used by public men now, giving a facsimile imitation of your letter and your signature. They took these awful publications, which I shall not name here, and stylographed them from one end to the other, and put them in the mail, and they are being sent forth all over the country to young people."

From these remarks, and like statements made in the debate, it appears that there were publications inclosed and mailed as private letters which this statute was intended to reach. This reference to the debate in congress is only made for the purpose of suggesting a possible answer to the objection so earnestly urged by the district attorney, and must be considered subject to the well-known rule declared by the supreme court in U. S. v. Union Pac. R. Co., 91 U. S. 79, that:

"In construing an act of congress, we are not at liberty to recur to the views of individual members in debate, nor to consider the motives which influenced them to vote for or against its passage. The act itself speaks the will of congress, and this is to be ascertained from the language used. But courts, in construing a statute, may with propriety recur to the history of the times when it was passed; and this is frequently necessary, in order to ascertain the reason as well as the meaning of particular provisions in it. Aldridge v. Williams, 3 How. 24; Preston v. Browder, 1 Wheat. 120."

The letter set forth in the present indictment is a private, personal letter, containing nothing of the character of a publication, unless we assume that it became a publication by the act of mailing, and this we cannot do under the law as interpreted by the supreme court.

It follows, therefore, that the letter is not within the inhibition of the statute, and the demurrer must be sustained, and it is so ordered.