OTJEN and others, Respondents, vs. FROHBACH and others, Appellants.

*December 7, 1911—February 20, 1912.*

*Trusts and trustees: Creation of trust: Essentials: Wills: Construction: Estate or interest devised: Life estate with power to use and consume: Guardians for minors: Right of divorced wife to appoint: Testamentary trustee.*

1. No particular form of words, and not even the use of the words "trust" or "trustee," is necessary to create a trust; and, on the other hand, the use of those words does not necessarily show an intention to create one.
2. To create a valid trust the intent so to do must be clear and the writing employed must be reasonably certain in respect to the subject matter or property embraced within the trust, the bene-

ficiaries or persons in whose behalf it is created, the nature and quantity of their interests, and the manner in which the trust is to be performed.

3. While adjudicated cases are sometimes helpful upon a question of testamentary construction, the guiding principle must always be to ascertain and enforce the intent of the testator as gathered from the particular will to be construed.

4. Testatrix, divorced from her husband and having the custody of their minor son and daughter, after making some small bequests, gave all the rest and residue of her property, real and personal, to said children, or to the survivor of them, share and share alike, during their natural lives and the life of the survivor, with the right to use and consume such part of his or her share as either of them should find necessary,—with remainders over. *Held,* that the children took a life estate with power to control and dispose of the property unincumbered by any trust.

5. The power to "use and consume," declared in the will, gives the right to use the *corpus* of the estate and necessarily carries with it the power to sell the personal estate absolutely and convey the fee of the real estate, together with the right to the possession and control of both.

6. Whether or not testatrix had a legal right, as against her divorced husband, to appoint a testamentary guardian over the persons of their children, whose custody had been awarded to her, she had the power, as incident to the disposition of her property, to vest the title thereto in a so-called guardian, and the naming of a person as guardian for the children in her will merely made such person a trustee of their property during minority.

APPEALS from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed in part.*

Two appeals were taken in this action, one by the plaintiffs and the other by the defendant *Hugo O. Frohbach* individually and as general guardian of the defendants *Harold O. Frohbach* and *Mabel Tenie Frohbach* from a judgment of the circuit court for Milwaukee county construing the will of Laura A. Frohbach, deceased.

The testatrix, Laura A. Frohbach, was married to the defendant *Hugo O. Frohbach* in June, 1895. Two children,

*Harold O. Frohbach* and *Mabel Frohbach,* were born to them, who at the time the will was executed were respectively nine and five years of age.   On September 18, 1905, the testatrix obtained a judgment of divorce against the defendant *Hugo O. Frohbach,* and the custody of the children, *Harold* and *Mabel,* then seven and three years of age, was given to their mother.   On September 26, 1906, the defendant *Hugo O. Frohbach* married one Lucile Moyer, with whom he has since resided and now resides in Ashland, Oregon.   On November 22, 1906, the testatrix made and executed the will in question.   On April 28, 1907, the testatrix died, leaving her two children as her only heirs at law.   Thereafter the will was duly admitted to probate.   *Laura W. Potter,* named as one of the executors, having declined to act, letters were duly issued to *Theobald Otjen* and *Retta Crowns,* the other executors named in the will.   *Hugo O. Frohbach* was duly appointed general guardian of the person and estate of the two children. The estate of the testatrix consists of real and personal property in Wisconsin of the value of about $40,000.

The will, omitting the formal portions, is as follows:

"II.  I give and bequeath to my daughter, *Mabel Tenie Frohbach,* all my silverware, jewelry, and personal ornaments, and to my son, *Harold Otto Frohbach,* the gold watch which I had from my father, and all the rest and residue of my property, real or personal, in possession or expectancy, I give, devise, and bequeath to my said son and daughter, or to the survivor of them, share and share alike during their natural lives and during the life of the survivor of them, with the right to use and consume such part of his or her share as either of them shall find necessary, and if either my said son or my said daughter should after my decease die without issue, his or her share shall go to the survivor of my said children for life, and if both my said son and daughter die after my decease leaving no issue of either living at the time of the death of the last survivor, then the whole residue and remainder of my estate shall go over to the persons and in the proportions specified in the next paragraph hereof.   If

either my said son or my said daughter shall die before my decease or after my decease leaving issue, such issue shall take absolutely all the share which the parent of such issue had at the time of the death of such parent or such share as the said parent would have had if he had survived me, as the case may be.  If neither my said son nor my said daughter nor any issue of either survive me, then absolutely to the persons and in the proportions named in the next paragraph hereof.

"III.  In case (1) that neither my said son nor my said daughter nor any issue of either survive me, (2) or in case either or both my said son and daughter do survive me, but after my death and at the death of the last survivor of my said son and daughter there be no issue living of either my said son or my said daughter, then and in either of these two cases I give, devise, and bequeath as follows:

"(a) One third of all my property to my stepmother, *Laura W. Potter,* if she be then living, if she be not then living said one third to my half-sister, *Mabel Bjorkquist,* and if neither *Laura W. Potter* nor *Mabel Bjorkquist* be then living, to the heirs at law of *Mabel Bjorkquist.*

"(b) One third of all my property to my aunt, *Retta Crowns,* of Port Washington, Wisconsin, if she be then living, and if she be not then living, said one third to the heirs at law of said *Retta Crowns.*

"(c) One third of all my property to my uncle, *George Ingersoll,* if he be then living, and if he be not then living said one third to his two eldest children, *Clara Ingersoll* and *George B. Ingersoll,* share and share alike, if they be then living, but if either said *Clara* or *George* be then dead, to their or either of their living issue in the same proportion, and if neither said *Clara* or *George* nor the issue of either be then living, then in that case to the heirs at law of my said uncle, *George Ingersoll.*

"IV.  If neither my son, *Harold,* nor my said daughter, *Mabel,* nor any issue of either shall survive me, or in case both my said son and daughter do survive me, but after my death and at the death of the last survivor of my said son and daughter, there be no issue living of either my said son or my said daughter, then in either of these two cases I give, devise, and bequeath as a specific legacy to *Mary E. Selmer,*

of Port Washington, Wisconsin, if she be then living, or to her issue if she be not then living, and have issue then living, the sum of two thousand dollars, to be paid within six months from my death, but if said *Mary E. Selmer* or her issue be not then living, then this two thousand dollar legacy shall lapse.

"V. I do hereby nominate and appoint *Laura W. Potter* as guardian of the person and estate of my said two children if I die during their minority, and if the said *Laura W. Potter* does not survive me, then and in that case I do hereby nominate and appoint said *Retta Crowns* of Port Washington, Wisconsin, as guardian of the person and estate of my two children in the like case.

"VI. I do hereby nominate and appoint the said *Laura W. Potter,* the said *Retta Crowns,* and *Theobald Otjen* and the survivors or survivor of them the executors of this my last will and testament, and I request that neither of them be required to give bond as such executors.

"In witness whereof I have hereunto set my hand and seal this 22d day of November, A. D. 1906.

"LAURA A. FROHBACH. (Seal.)"

The circuit court found substantially the facts as above set forth and also the following conclusions of law:

"That it was the intention of the said Laura A. Frohbach, as disclosed by her said last will and testament, to create a life estate in her children, with remainders over to their issue, if any, and in the event of her children dying without issue, then after paying a legacy of two thousand dollars to *Mary E. Selmer,* if living, and to her issue in case of her death, the estate was to be distributed equally between *Laura W. Potter, Retta Crowns, George Ingersoll,* and their respective heirs in case of their death.

"That in and by the terms of the said will of the said Laura A. Frohbach a valid trust was created for and during the life of the said *Harold O. Frohbach* and *Mabel Tenie Frohbach,* and the survivor thereof.

"That in and by the terms of the said will of Laura A. Frohbach, deceased, there was no valid appointment of a testamentary guardian for the said *Harold O. Frohbach* and *Mabel Tenie Frohbach.*

"That the executors named in said will took and now have the legal title to the property therein described, for and during the said trust term, upon the trust to care for and manage the estate devised; to receive the rents, income, and profits thereof, and out of the same to pay all taxes, costs, repairs, and expenses incident to managing the said estate, and the net amount of such rents, income, and profits to be divided equally between the said *Harold O. Frohbach* and *Mabel Tenie Frohbach,* share and share alike, or the heirs of either of them as the case may be, until the expiration of the trust term.

"Let judgment construing said will in accordance with these findings be duly entered, with costs to be paid out of the estate of the said deceased."

For the plaintiffs and appellants *Theobald Otjen* and *Retta Crowns,* as executors, and *Laura W. Potter,* as testamentary guardian, there was a brief by *Otjen & Otjen* and *Kronshage, Goff, Fritz & Hannan,* attorneys, and *Guy D. Goff,* of counsel, and oral argument by *Guy D. Goff.*

For the defendant *Hugo O. Frohbach* there was a brief by *McElroy & Ferguson,* and oral argument by *W. J. McElroy* and *H. T. Ferguson.* They argued, among other things, that the policy of the law of testamentary guardianship, as well as the express and unmistakable language of secs. 3964, 3965, Stats. (1898), is against any construction allowing the mother, during the life of the father, to appoint a testamentary guardian for their children. *Taylor v. Jeter,* 33 Ga. 195, 81 Am. Dec. 202; *In re Coons,* 20 Ohio Cir. Ct. 47; *McKinney v. Noble,* 37 Tex. 731; *S. C.* 38 Tex. 195; *In re Waring's Will,* 46 Misc. 222, 94 N. Y. Supp. 82; *In re Neff,* 20 Wash. 652, 56 Pac. 383; *Hill v. Hill,* 49 Md. 450, 33 Am. Rep. 271; *Ex parte Bell,* 2 Tenn. Ch. 327; *Ingalls v. Campbell,* 18 Oreg. 461, 24 Pac. 904; *Ex parte Edwards,* 3 Atk. Ch. 519.

For the respondents *Otjen* and others, upon the appeal of *Hugo O. Frohbach,* there was a brief by *Otjen & Otjen* and

*Kronshage, Goff, Fritz & Hannan,* attorneys, and *Guy D. Goff* and *S. J. M'Mahon,* of counsel, and oral argument by *Guy D. Goff.*

There was also a brief and oral argument by *Edgar L. Wood* as guardian *ad litem* of *Harold O. Frohbach* and *Mabel Tenie Frohbach.*

KERWIN, J.   The appeals in this action present two main questions for determination: (1) The character of the estate devised and bequeathed to the children by paragraph II of the will; and (2) What effect shall be given to paragraph V of the will, which undertakes to appoint a general guardian of the person and estate of the children of the testatrix during their minority.

The court below, upon the facts which are undisputed, concluded that it was the intention of the testatrix as disclosed by her will to create a life estate in her children with remainder over to their issue, if any; and in the event of the death of her children without issue, then to others specified in the first conclusion of law set forth in the statement of facts; that in and by the terms of the will a valid trust was created for and during the life of the children of the testatrix, *Harold O.* and *Mabel Tenie Frohbach,* and the survivor thereof.

On the part of the defendant *Hugo O. Frohbach* it is contended that by the terms of the will, coupled with the surrounding circumstances, it is clear that no trust was created, but that the property passed unhampered to the children during their lives, with power to consume the same as they might deem necessary, hence that they had absolute power to convey a fee title, and were vested with the possession and control of the property; while on the part of the plaintiffs it is argued that a trust was created.

Both parties rely upon the same facts to support their respective contentions.   It is also conceded by all parties that the intention of the testatrix as gathered from the four cor-

ners of the will, in connection with the surrounding circumstances, must govern in the construction of the instrument. Counsel do not disagree materially upon the general rules of law involved, but only as to the application of these rules to the facts of the case. It is true, as insisted by counsel for plaintiffs, that no particular form of words is necessary to create a trust. A trust may be created without the use of the words "trust" or "trustee," and, on the other hand, the use of the words "trust" or "trustee" do not necessarily show an intention to create or declare a trust. The intention to create a trust must be clear, and the writing employed must be reasonably certain in its material terms; "and this requisite of certainty includes the subject matter or property embraced within the trust, the beneficiaries or persons in whose behalf it is created, the nature and quantity of interests which they are to have, and the manner in which the trust is to be performed. If the language is so vague, general, or equivocal that any of these necessary elements of the trust is left in real uncertainty, then the trust must fail." 3 Pomeroy, Eq. Jur. (3d ed.) § 1009. The general rule has often been stated by this and other courts as shown by the numerous cases cited by counsel. *Holmes v. Walter,* 118 Wis. 409, 95 N. W. 380; *In re Will of Kopmeier,* 113 Wis. 233, 89 N. W. 134; *Ford v. Ford,* 70 Wis. 19, 33 N. W. 188; *Scott v. West,* 63 Wis. 529, 559, 24 N. W. 161, 25 N. W. 18; *Allen v. Boomer,* 82 Wis. 364, 52 N. W. 426; *Tobias v. Ketchum,* 32 N. Y. 319; *Bradley v. Amidon,* 10 Paige Ch. 235; *Brewster v. Striker,* 2 N. Y. 19; *Toronto G. T. Co. v. C., B. & Q. R. Co.* 123 N. Y. 37, 25 N. E. 198; *In re Matter of James,* 146 N. Y. 78, 40 N. E. 876. The foregoing and other cases are relied upon by plaintiffs as establishing a trust under the will in connection with the admitted facts. And it is argued that from the terms of the will, in the light of all the surrounding circumstances, it is manifest that the testatrix intended to create a trust, and that all the essential elements of a testa-

mentary trust are present, namely, a desire that her children should have simply a life estate with remainder over, a sufficiently definite subject, the specification of all her property, and the command that it should definitely and absolutely vest in the issue of her children, or, in default of such issue, then over as provided in the will. It is further argued that in order to carry out the intention of the testatrix and preserve the *corpus* of the estate a trust is necessary. This brings us again to the all-dominant rule in the construction of wills, the intention of the testator, to be gathered from the particular will to be construed. *Allen v. Boomer,* 82 Wis. 364, 52 N. W. 426; *Becker v. Chester,* 115 Wis. 90, 91 N. W. 87, 650; *In re Donges's Estate,* 103 Wis. 497, 79 N. W. 786; *Davies v. Davies,* 109 Wis. 129, 85 N. W. 201; *In re Albiston's Estate,* 117 Wis. 272, 94 N. W. 169. As this court said in *Albiston's Estate, supra,* the question presented in such cases is simply one of construction of a will, and that while adjudicated cases are sometimes helpful upon such a question, the guiding principle must always be to ascertain and enforce the intent of the testator as gathered from the particular will to be construed.

The language of the will under consideration is clear and unambiguous. After some minor bequests the testatrix gave all the rest and residue of her property, real and personal, in possession or expectancy, to her son and daughter or to the survivor of them, share and share alike, during their natural lives and during the life of the survivor of them, with the right to use and consume such part of his or her share as either of them shall find necessary. There would seem to be no room for construction on this language. The children take a life estate with the right to use and consume such part as either shall find necessary. There is no intimation of any trust in the language used, and none can be inferred from the will when read in the light of surrounding circumstances. The surrounding circumstances rather repel than support any

intention to create a trust. The divorce from her husband and his speedy marriage were well calculated to alienate the affections of the testatrix from him. Obviously her affections were centered upon her two children. Her other relatives are distant. It is most natural, therefore, to infer that the testatrix's ruling passion was for her children, and that they should enjoy without restraint her property, not only the income therefrom, but such part of the *corpus* as they should find necessary to consume, preserving such remainder only as was not used by her children. It is clear from the terms of the will, read in the light of the surrounding circumstances, that the intention of the testatrix was that her children should have a life estate with power to control and dispose of the property unincumbered by any trust. The authorities, we think, support this conclusion as to the real estate and personal property devised and bequeathed.

The case of *Bamforth v. Bamforth,* 123 Mass. 280, approved by this court in *Larsen v. Johnson,* 78 Wis. 300, 47 N. W. 615, as regards the real estate devised is strongly in point. In that case the will provided: "I give and bequeath to my parents, Samuel and Betty Bamforth, the use and improvement of all my estate, both real and personal, of which I may be possessed at the time of my decease, and so much of the estate itself as may be necessary for their comfortable support so long as either of them shall live," with remainders over to other relatives. The court in its opinion said:

"The legal effect of the testator's disposition of his real estate is as follows: He first gives his parents an estate for life. He also gives them 'so much of the estate itself as may be necessary for their comfortable support so long as either of them shall live,' thereby giving them a power to dispose of so much of the fee as may be necessary for that purpose; and whether their determination upon such question of necessity is or is not conclusive, no trust is created in them or in the executor."

In *Larsen v. Johnson, supra,* Larsen died leaving a widow and no children, and leaving land in Racine county which

by his will he gave to his wife, "to be for her sole use and benefit so long as she shall live, with power to dispose of the same if it shall be necessary for her support and comfort in this life." He also bequeathed to her certain kinds of personal property for life, and his goods and chattels generally to be hers forever. The residuary clause of the will was: "Whatever remains after her death shall go to the heirs of him and her in the manner provided by the laws of this state." His only heirs were his two brothers and the children of two deceased brothers. It was held in the above case that the power given enlarged the estate devised to a fee, and that the widow, the contingency arising, could convey a fee. The court said (page 307):

"If the widow had the power to dispose of the *corpus* or fee of the estate, on the condition or contingency of its necessity for her support and comfort, and the evidence shows that such a contingency arose, then the title of the respondent is perfect."

The respondent claimed under conveyance from the widow. It will be noted that in *Larsen v. Johnson, supra,* the power to dispose was given "if it shall be necessary for her support and comfort in this life," while in the instant case, after giving a life estate, the will further gives the right "to use and consume such part of his or her share as either of them shall find necessary." In *Auer v. Brown,* 121 Wis. 115, 98 N. W. 966, the testator devised all of his property to his wife for her life, with full power and authority to sell and transfer the same if she desired to do so; also to convert any of the real estate into personal property, and to use any or all of such estate as she may desire. The will also contained a residuary clause. This court held that under sec. 2108, Stats. (1898), the estate of the life tenant under the power before referred to was a fee, so that her deed conveyed a fee, and that the power of disposition conferred upon the donee was absolute under sec. 2112, and unaccompanied by any trust. We think in the instant case the children were vested with a life estate

in the real estate devised to them free from any trust.   Nor do we think the personal property was disposed of in trust, but passed absolutely to the children of the testatrix.   If a naked life estate had been granted, under the rule of *Golder v. Littlejohn,* 30 Wis. 344, doubtless the personal estate would vest in the executors, but here the gift was specific, and the clause, "with the right to use and consume such part of his or her share as either of them shall find necessary," applies to personal as well as real property.   *Swarthout v. Ranier,* 143 N. Y. 499; *Harris v. Knapp,* 38 Mass. 412; *Dodge v. Moore,* 100 Mass. 335.

The right to use and consume, declared in the will, clearly gives the right to use the *corpus* of the estate devised and bequeathed, and therefore the power to sell the personal property absolutely and convey the fee in the real estate necessarily follows.   *Perkinson v. Clarke,* 135 Wis. 584, 116 N. W. 229; *Murray v. Kluck,* 87 Wis. 566, 59 N. W. 137; *Larsen v. Johnson,* 78 Wis. 300, 47 N. W. 615; *Johnson v. Battelle,* 125 Mass. 453; *Leggett v. Firth,* 132 N. Y. 7, 29 N. E. 950; *Allen v. Hirlinger,* 219 Pa. St. 56, 67 Atl. 907; 31 Cyc. 1044–1048 and cases cited.

And where "it can be gathered from the will that the testator intended that the legatee for life should enjoy the property in its then condition, the bequest is specific, and the legatee is entitled to the possession and enjoyment of the property thus specifically bequeathed, although the bequest be made in general terms and without any particular designation of the property."   *Golder v. Littlejohn,* 30 Wis. 344; *Pierce v. Stidworthy,* 81 Me. 50, 16 Atl. 333; *In re Garrity's Estate,* 108 Cal. 463, 38 Pac. 628, 41 Pac. 485; *Scott v. Scott,* 137 Iowa, 239, 114 N. W. 881; *Park's Adm'r v. American H. M. Soc.* 62 Vt. 19, 20 Atl. 107; *Harris v. Knapp,* 38 Mass. (21 Pick.) 412; *Dodge v. Moore,* 100 Mass. 335.

Counsel for respondent appear to rely strongly upon *Allen v. Boomer,* 82 Wis. 364, 52 N. W. 426.   But it will be seen

that the will in that case not only bequeathed the entire estate of the testatrix, Charity Allen, but also bequeathed out of her own and her husband's estate sums necessary for support and education of certain persons according to a mutual agreement referred to in the will and stated to be expressed in his will, with a clause that all the property left "that was mine or my husband's shall be divided between his and my legal heirs, one half to his heirs and one half to mine." At the same time the husband of the above named testatrix executed his will in similar terms in which he devised all of his property to his wife, making charges upon the two estates. The wife died first, and it was held that under her will the husband took only a life estate in her property, and that the estate of the husband was held in trust for his heirs and the heirs of his wife as specified in her will. The foregoing facts and others appearing in the case show that it does not apply to the situation now before us.

Upon this branch of the case we conclude that the will of Laura A. Frohbach gives to her children, *Harold O.* and *Mabel Tenie Frohbach,* each a life estate in one half of the residuary estate of the testatrix, with the power to sell, use, and consume such portion as either shall find necessary; and that said children of the testatrix have the right to the possession and control of the property, subject to management during their minority by a guardian or trustee as more definitely specified hereinafter in treating plaintiffs' appeal.

Some point is made by counsel as to the rights of remaindermen, and while it seems to be conceded that there is no controversy as to their rights, it is said that the findings and judgment of the circuit court do not clearly state such rights. It is true that the findings and judgment are quite general as to the rights in remainder, but since there is no controversy upon the subject we cannot see that more detailed specification is necessary.

Plaintiffs appeal from that part of the judgment which ad-

judges that there was no valid appointment of a testamentary guardian for *Harold O.* and *Mabel Tenie Frohbach.* This presents a question not free from difficulty. It is contended on the part of the defendant that it is the settled law of this state, under sec. 3964, Stats. (1898), that the father has the *prima facie* right to guardianship (*Markwell v. Pereles,* 95 Wis. 406, 69 N. W. 798); that under sec. 3965 the father, if living, and, in case of his death, the mother of every minor child may by last will in writing appoint, and that the paramount right of the father will be recognized (*Welch v. Welch,* 33 Wis. 534); also that the right of testamentary disposition is the creature of statute, and that in a divorce proceeding the court has no authority to take the child from the parents and give it to a stranger (*McCabe v. McCabe,* 126 Wis. 154, 105 N. W. 665). It is therefore argued that the mother had no power to appoint a testamentary guardian for her children. On the part of the plaintiffs it is insisted that under the terms of the judgment of divorce the care and custody of the children were given to the testatrix during minority or until the further order of the court, and that this judgment suspended the power of defendant over the children, hence the mother had the right to appoint, relying upon *In re Guardianship of McChesney,* 106 Wis. 315, 82 N. W. 149; Hochheimer, Custody of Infants; *Wilkinson v. Deming,* 80 Ill. 342; secs. 3964, 3965, Stats. (1898). It is also insisted that even though the mother had no power to appoint a testamentary guardian over the person of the children, the appointment should be held valid as to the property.

The court below adjudged that by the terms of the will there was no valid appointment of a testamentary guardian for the minors. It does not seem necessary to discuss or decide the question whether a married woman has the right to appoint a testamentary guardian over the person of her children.

Whether the absconding of the father, or the award of the custody of the children by the judgment of divorce to the

mother, was sufficient to authorize her to make the testamentary appointment as to the person of the minors, we need not and do not decide.  Mrs. Frohbach had ample capacity to dispose of her property by will.  Incident thereto she was competent to vest the title in the so-called testamentary guardian as a trustee for the minors.  As we construe the will, that is all she did.  The nature of the status of *Laura W. Potter* created by the will is not materially affected by the mere characterization of it in the instrument.  Regardless of such characterization, she was made merely the trustee of the property of the minors during their minority.  *Laura W. Potter* is entitled to take and hold the property for the minors during minority, and in so far as the judgment is to the contrary it is wrong.

*By the Court.*—The judgment so far as in conflict with the foregoing is reversed on both appeals, and the cause is remanded with directions to the court below to correct and reenter the judgment in accordance with this opinion.

TIMLIN, J., took no part.