[No. 25423. *En Banc.* July 29, 1935.]

*In the Matter of the Estates of* CHARLES DOEPKE *and* AUGUSTA DOEPKE, *Deceased.*[1]

[1]Reported in 47 P. (2d) 1009.

*E. O. Connor*, for appellant.

*Dillard & Powell* and *Donovan & Donovan*, for respondents.

BEALS, J.—Charles and Augusta Doepke were for many years husband and wife and residents of Spokane county, where they owned and operated a valuable farm. The couple had seven children; three sons, Herbert, George and Edward; and four daughters, Alma, Dora, Sophia and Laura.

Charles Doepke died May 1, 1921, leaving a will bequeathing all his personal property to his wife and giving her a life interest in his share of the real estate. He devised to each of his sons a specific tract of real estate, directing that Herbert pay into the estate four thousand dollars, George twenty-five hundred dollars and Edward two thousand dollars; in all eight thousand five hundred dollars. Mr. Doepke then bequeathed to each of his daughters the sum of two thousand dollars; it being manifestly his intention, as he left little personal property, that the bequests to the daughters be paid out of the money to be turned over to the executor by the three sons, who were to pay the respective charges upon their devises within one year after the death of Augusta Doepke, if she survived her husband. Mr. Doepke's will further provided that, in case he should survive his wife, the residue of his estate, after the particular devises, should be divided among his children, share and share alike. Edward was named executor of this will without bond and was directed to execute the same without the intervention of the court.

After Mr. Doepke's death, his will was admitted to probate, an order of solvency entered, notice to cred-

itors published, and the executor allowed $500 for his services.

Augusta Doepke made her will June 5, 1922. She thereby devised to her sons, respectively, the tracts of real estate which Charles Doepke had devised to them, in each instance subject to the payments required to be made by her husband's will. The paragraphs of the will containing the devises to the sons next precede the following:

"Sixth. That my executor shall use said sums of money directed to be paid by my sons as hereinbefore provided for the payment of the sums provided hereinafter for my daughters."

She then bequeathed two thousand dollars to each of her daughters, the paragraphs making these bequests being followed by:

"Eleventh. I give, devise and bequeath to my beloved son Edward Robert Doepke the sum of $3000, being the amount of life insurance left by my husband to me, and the rest, residue and remainder of my property of whatever kind or character, shall be distributed among each of my children herein named, share and share alike."

The testatrix named her son Edward as executor of her will, to act without bond and without the intervention of the court.

Augusta Doepke died September 6, 1932, her will being thereafter admitted to probate and the appointment of the executor therein named confirmed. May 23, 1934, the executor filed his final account and petition for distribution, to which exceptions were filed by certain of the devisees.

In due time, the matter came on regularly for hearing, and, after a lengthy trial, the court entered its order settling the executor's accounts and distributing the residue of the estate, from which order Edward Doepke, both as executor and individually, has ap-

pealed. On the same day this decree was entered, the court signed an order consolidating the estates of Charles and Augusta Doepke, reciting that the two estates embraced practically the same property and that the same persons were interested therein as devisees.

The trial court held that the legacy to Edward in the sum of three thousand dollars, contained in the paragraph of Augusta Doepke's will above quoted, was a specific legacy; found that the fund bequeathed to Edward had ceased to exist at the time of Augusta's death; and concluded that the legacy therefore failed, and that Edward was not entitled to receive anything thereunder. Appellant assigns error upon this ruling.

In the course of administration, the executor brought suit against his sister Laura upon a promissory note which she had executed to her mother, and recovered judgment against her in favor of the estate. The trial court, in settling Laura's interest in the estate, because of some agreement on the part of some of the heirs, made an order concerning this judgment, upon which appellant assigns error.

During the course of administration, Edward and Alma presented claims against the estate based on two promissory notes payable to them respectively. In the order settling the accounts, these notes were by the court rejected, which ruling is also assigned as error. Other claims and alleged disbursements were rejected by the trial court over the protest of the executor, of which rulings he complains.

The executor also contends that the trial court erred in its mathematical calculations, and charged him with over $1,800 more than he was properly accountable for, and that the trial court erred in refusing to allow the executor adequate compensation for his own services and as fees for his counsel.

The decree of distribution is entitled in the consolidated estates, and distributes to each daughter two thousand dollars; the two wills being treated as one in that connection.

■ Considering, in the first place, the three thousand dollar bequest to Edward, it is manifest that Mrs. Doepke, in making her will, followed exactly the plan which was the basis of her husband's will. After Mr. Doepke's death, she had received three thousand dollars as the proceeds of a policy upon his life. She had, therefore, this fund subject to her testamentary disposition, which her husband had not possessed. It appears that Mrs. Doepke, at least for some time after making her will, preserved this three thousand dollar fund intact and apparently treated it, to some extent at least, as having some separate entity or quality of its own. Respondents state that she enjoyed a gross income of approximately $1,900 per year and a net income of something over half that amount. Her son Edward, who was by profession an accountant, was apparently her chief adviser in matters of business.

After the summer of 1930, Mrs. Doepke lived with Edward and another of her sons on the farm. By this time, Mrs. Doepke had become very feeble, and for the last two years of her life was blind and partially paralyzed. During this period, Edward handled his mother's financial affairs, having the privilege of drawing money from her banking account on his own signature.

Soon after the death of the mother, and even before the probate of her will, antagonisms developed between Edward and his brothers and sisters, who felt that he had unduly benefited through his confidential relations with the mother. It is undoubtedly true that, during the last years of Mrs. Doepke's life, a considerable amount of her money was spent. It appears from the

record that the trial court criticized Edward quite severely in this connection because of his inability or refusal to account for the money which had been expended. It is undoubtedly true that the accounts of the two estates were not well kept and became somewhat confused.

Respondents contend and the trial court found that the legacy to Edward was specific in its character; that the testatrix intended to bequeath to Edward a particular fund of three thousand dollars, received by her as the proceeds of her husband's life insurance; that the fund had ceased to exist at the time of Mrs. Doepke's death; and that the legacy, being specific, for this reason failed. On the other hand, appellant contends that the legacy was demonstrative and is payable to him out of the general funds of the estate, regardless of whether or not the particular three thousand dollars, the actual proceeds of the life insurance, had been expended by Mrs. Doepke during her lifetime.

To determine this question, we shall discuss the matter from the standpoint of whether or not the bequest is specific or general, treating the classes of general and demonstrative legacies as similar for the purposes of this discussion.

In 69 C. J., § 2085 (2), page 919, a specific legacy is defined as a bequest of a particular thing, or specified part, of the testator's estate.

"The testator must intend that the legatee have the very thing bequeathed, not merely a corresponding amount in value or like property."

In § 2086 (3), a general legacy is defined as

" . . . one which does not direct the delivery of a particular thing or part of the estate, as distinguished from all others of the same kind and capable of precise identification, or the payment of money out of a particular portion of the estate; . . . The legacy is one of quantity, either of money or other

chattels, not in any way separated or distinguished from all others of a like kind."

By § 2087 (4), a demonstrative legacy is defined as

". . . one payable out of a particular fund primarily, but, if the fund designated fails, out of the general assets. The legacy is one of quantity; two elements are necessary: (1) It must be an unconditional gift in the nature of a general legacy, and (2) the legacy must indicate the fund out of which it is payable. For a legacy to be treated as demonstrative, the fund must be in existence at the time of the testator's death."

In § 2096 (2), the rule is laid down that

"A legacy is presumed to be general rather than specific, unless it clearly appears to be specific, especially where the legacy is of a pecuniary character."

It is also stated that a legacy is presumed to be demonstrative rather than specific.

In 28 R. C. L., page 293, § 267, the rule is laid down as follows:

"Courts are averse to construing legacies to be specific, and will not unless it be clear that the testator so intended. This is because a general legatee has greater protection against the risk of ademption. If compatible with the language employed, they are disposed to interpret gifts as general legacies; but if the language is clear and unequivocal, and plainly evidences an intent of the testator to create a specific legacy, such effect must be given to that language. In cases of doubt as between a demonstrative or a specific legacy the courts incline towards the construction which classifies the legacy as demonstrative, and a clear intention must appear in order to make a legacy specific rather than demonstrative."

This court, in the case of *Martin v. Barger,* 62 Wash. 672, 114 Pac. 505, quoted at length from 3 Pomeroy's Equity Jurisprudence (3d ed.), §§ 1130, 1132 and 1133, in which the three classes of legacies are well defined.

By the bequest, Augusta Doepke gave to her son Edward "the sum of $3,000, being the amount of life insurance left by my husband to me." Paragraph 11 of Mrs. Doepke's will, *supra.* The bequest was of a definite sum of money; it was not described as the life insurance, but as the "amount of life insurance;" it may be considered as meaning a sum equal to the amount of life insurance. The money had been paid to Mrs. Doepke prior to the date she made her will.

The courts have been much concerned with problems similar to that which now confronts us. Was Edward's legacy adeemed by the expenditure by Mrs. Doepke during her life-time of the bank deposit which represented originally the life insurance money? Shelby, Circuit Judge, in the case of *Kramer v. Kramer,* 201 Fed. 248, defined ademption as follows:

"Ademption of a specific legacy is the extinction or withdrawal of it, in consequence of some act of the testator equivalent to its revocation, or clearly indicative of an intention to revoke. The ademption is effected by the extinction of the thing or fund bequeathed, or by a disposition of it subsequent to the will, which prevents its passing by the will, from which an intention that the legacy should fail is presumed. *Kenaday v. Sinnott,* 179 U. S. 606, 617, 21 Sup. Ct. 233, 45 L. Ed. 339; *Ford v. Ford,* 23 N. H. (3 Foster) 212."

In the case of *White v. White,* 73 S. C. 261, 53 S. E. 371, the supreme court of South Carolina, in construing a will which provided that the executors should "collect the insurance policies on my life, and from this said amount pay the sum of two hundred dollars each" to certain persons, held that the bequest was not specific, and should be paid out of the estate, in case the fund failed.

In the case of *Patanska v. Kuznia,* 102 N. J. E. 408, 141 Atl. 88, the New Jersey court of chancery held that legacies bequeathing substantial amounts of cash, and

referring to the testator's "cash money" as on deposit in certain banks, were not specific, and were good as general bequests, although the testator had withdrawn the money from the banks and invested it in real estate.

The supreme court of North Carolina, in the case of *Shepard v. Bryan,* 195 N. C. 822, 143 S. E. 835, held that cash legacies "to be paid by my executrix out of the income from my estate and at the convenience of my executrix" were demonstrative legacies, and not specific, were payable out of gross income, and if that fund should fail, were charges against the residuary estate.

The supreme court of Maine, in the case of *Maxim v. Maxim,* 129 Me. 349, 152 Atl. 268, 73 A. L. R. 1244, held that a legacy will be held specific only when the intent of the testator to make it such is clear and plain. The court quoted from the case of *Tifft v. Porter,* 8 N. Y. 516, in which strong language was used in laying down the rule that a legacy is to be presumed general rather than specific. In the Maine case, it appeared that the testator in his will had stated that he owned a six thousand dollar note secured by a mortgage. Following this statement, he proceeded: "I give and bequeath out of said amount of money" several bequests, using the words just quoted in connection with each one. The note was paid prior to the testator's death, and the proceeds invested or mingled by the testator with other property. The court held that the legacies were not adeemed, but should be paid out of the general assets of the estate.

It is, of course, true, as argued by respondents, that, in construing a will, the court will consider the language thereof and the situation and circumstances surrounding the testator at the time of its execution. *Davis v. Brown,* 112 Wash. 121, 191 Pac. 1098; *Shufeldt*

*v. Shufeldt,* 130 Wash. 253, 227 Pac. 6; *In re Snodgrass' Estate,* 135 Wash. 303, 237 Pac. 721; *Cotton v. Bank of California,* 145 Wash. 503, 261 Pac. 104. It is equally true that the intention of the testator is to be ascertained as of the time of the execution of the will; and that, in endeavoring to ascertain this intent, the entire purpose and scheme of the instrument shall be considered. *In re Lotzgesell's Estate,* 62 Wash. 352, 113 Pac. 1105; *Peiffer v. Old National Bank & Union Trust Co.,* 166 Wash. 1, 6 P. (2d) 386.

As above stated, it is evident that much ill feeling between the Doepke children has existed both before and since their mother's death. The trial court strongly criticized Edward's conduct, both before his mother's death and afterward, while acting as her executor. It appears that some of the heirs had applied for an order removing him as executor, which application, after a hearing, was by the court denied. If, in determining the question now under discussion, it were the duty of this court to consider the general situation and certain of Edward's acts which may be the subject of just criticism, rather than his legal rights under his mother's will, a different question would be presented. As above stated, however, the decision must turn upon the language of the will, and not upon matters which subsequently transpired. Edward cannot be punished by taking away from him a legacy to which he is legally entitled because the court may deem his conduct subject to criticism.

The bequests to the daughters in the sum of two thousand dollars each, to be paid out of the moneys turned into the estate by the three sons in the nature of owelties, form parts of the specific bequests to the sons and are to be considered upon an equal basis therewith.

Respondents cite several authorities in which be-

quests were held to be specific rather than general. In the case of *Georgia Infirmary v. Jones,* 37 Fed. 750, Judge Wallace held that, under a will which expressly disposed of all of the testator's estate, except certain claims against the United States, and then bequeathed a specified sum out of the proceeds of these claims, the bequests last referred to were specific; and that, if the claims had been collected by the testator during his lifetime and invested, the legacies should be held adeemed. The testator left certain uncollected claims, and Judge Wallace held that the testator by his will intended to dispose of all his estate in possession at the time of his death, save such of his claims as were uncollected; and that the bequests which were the subject matter of the litigation were limited to the uncollected claims, upon which nothing could be realized, and were not charges against the general estate.

In the case of *Smith v. McKitterick,* 51 Iowa 548, 2 N. W. 390, there was involved only a matter of interest on a specific bequest. It was apparently conceded that the legacy was specific, and the court used the language relied upon by respondents merely as matter of argument, and not as any portion of the decision of the question presented. The case merely determined the date from which the legatee should have the benefit of interest upon a bequest which it was admitted was specific in its nature.

Other authorities are cited by respondent, in which the correct rules for distinguishing the different classes of bequests were laid down and applied to varient states of facts. Among these authorities, we find no case which closely parallels the case at bar, the different situations varying so greatly that the decisions rendered thereon are, as we view the cases, not contrary to our conclusion.

In the case of *Martin v. Barger,* 62 Wash. 672, 114

Pac. 505, this court held specific a bequest in favor of a son, the will providing that one thousand dollars be credited on the son's note held by the mother. The question decided concerned largely the date when the credit should be made as affecting the accrual of interest. The decision was clearly right, and is not in point here.

Respondents argue that, while a legacy payable *out of* a fund is a demonstrative legacy, as held in the authorities cited by appellant, the legacy to appellant constitutes a bequest *of* a fund, and that the authorities cited are, therefore, not in point. In so far as the legacy to Edward is concerned, we hold that it is not a bequest of the proceeds of the life insurance policy, but is a bequest of the sum of three thousand dollars, and that the words following are simply descriptive and indicate, possibly, that the testatrix desired to make clear the fact that she was not, by a bequest to one of her children, giving him any portion of the community estate formerly owned by her husband and herself and disposed of by them evidently in accordance with an agreed plan. Whatever Mrs. Doepke's intention was, we hold that the legacy to Edward is not specific and does not fail because the particular money received by Mrs. Doepke by way of life insurance appears to have been expended during her lifetime. The trial court erred in setting this legacy aside, and the same should be reinstated, payable out of the general assets of the estate after the payment to the daughters of their legacies of two thousand dollars each.

Several of respondents testified that, in conversation with them after the mother's death, Edward stated that the life insurance money had been expended, and that there was nothing coming to him under the bequest. Assuming that Edward made the statements credited to him by the witnesses, it cannot be held that they

amounted to a waiver of any rights which he had, nor can any estoppel against him be predicated thereon. It seems to be admitted that the particular money had been spent. Whether or not Edward at one time thought that, because of this fact, the bequest had failed, is immaterial. He may now assert his legal rights under the will.

The executor recovered, for the estate, judgment against his sister Laura upon a promissory note which she had executed in her mother's favor. The judgment was in the sum of $518.24, and upon the final hearing five of the seven devisees waived any claim on this judgment, which was, of course, an asset of the estate, chargeable against Laura's share. Over the protest of appellant and one other devisee, the court deducted two-sevenths of the amount due from Laura's share, and left this amount in the estate, to be divided among all seven beneficiaries. This was, of course, wrong, and the order appealed from must be reversed and the matter remanded for correction of this error.

During the course of administration, the executor filed his claim against the estate upon a note alleged to have been executed in his favor by his mother in the sum of $770. Another claim was filed by Alma, based upon a note in her favor, signed by the mother, in the sum of two hundred dollars. These notes were allowed by the court upon being filed, but upon the final hearing the court refused to allow the notes as claims against the estate.

Appellant contends that the allowance of the claims by the trial court in the first instance was conclusive and not subject to review upon the final hearing. While upon the allowance of a claim by the executor and the court the executor may proceed to pay the same, in such a case as this, where the claim in question is that of the executor himself, the matter may be again heard

and passed upon by the court at the final hearing. As between the executor himself and the estate (no question concerning any liability of his surety being considered), the approval of his claim by the court should be considered as advisory merely and subject to review upon final hearing. *In re Rohne,* 157 Wash. 62, 288 Pac. 269.

Upon the merits, the court found that, at the time of the alleged execution of the note, Augusta Doepke was incompetent, and that the evidence did not support a finding that the note was "legally executed" by her. Examination of the evidence in this connection convinces us that it preponderates in favor of the finding of the trial court. As to the claim filed by Alma, the rejection thereof by the trial court cannot be reviewed here upon an appeal by the executor.

Appellant bitterly complains of the allowances made to himself and his counsel for services rendered in connection with the estates. The trial court allowed appellant for services in the two estates the sum of two thousand dollars, and allowed him as compensation for his attorney $1,250. Appellant argues that, after the allowance to him of five hundred dollars for his compensation in the Charles Doepke estate, which allowance was made during the month of November, 1921, he performed other services in that estate for which he should receive much additional compensation.

Examination of the record convinces us that the allowance made by the trial court to the executor was ample compensation for the services rendered in both estates. The services rendered were not particularly arduous in their nature, and appellant, being himself a bookkeeper and accountant, was not required either to employ outside assistance or himself go to unusual trouble. Certainly, during the long period of time between November, 1921, and the death of Augusta

Doepke, no services of consequence were required of the executor of Charles Doepke's will. In any event, from the record before us, it does not appear that, during this period, any services of value were performed by appellant.

In this connection, appellant complains of the denial by the trial court of certain claims advanced by him for credits and allowances which he argues were necessary in the care and management of the estate. The trial court correctly ruled upon these items, and we find no error in connection therewith.

Appellant also complains of the refusal of the trial court to charge his brothers George and Herbert with the sum of fifty dollars for a fence, which appellant alleges they removed from the estate's property. This ruling of the trial court was also correct and is affirmed.

The trial court rejected the amount fixed by appellant as payment to his attorney for services rendered in connection with the two estates, and allowed appellant's counsel the full sum of $1,250 for all services rendered. Examination of the record convinces us that this allowance was somewhat less than that which the attorney should have received. In our opinion, an allowance of an additional five hundred dollars to the executor's attorney is proper.

Finally, appellant argues that the trial court carried certain mathematical errors into the decree of distribution, to appellant's prejudice. As the matter must be remanded to the trial court for further proceedings, we direct that, upon the final hearing, appellant may call to the court's attention any errors in computation which he believes were carried into the final decree, and that the court may, if convinced that the account was incorrectly cast, make an order correcting the same.

The order appealed from is reversed, and the proceeding remanded to the trial court, with instructions to proceed in accordance with this opinion. Neither party will recover any costs in this court.

MITCHELL, MAIN, HOLCOMB, BLAKE, and GERAGHTY, JJ., concur.

TOLMAN, J. (dissenting)—I am not in accord with that part of the majority opinion which holds that the legacy to the son Edward was a general and not a specific bequest.

In the construction of a will, the first and foremost duty is to ascertain the intent of the testator from the instrument itself, if possible, and if not, then from the instrument considered in the light of the circumstances surrounding the testator and known to him at the time that the will was executed.

The words "being the amount of life insurance left by my husband to me," following the bequest to Edward of the sum of three thousand dollars, perhaps lacks something of that definiteness required to constitute a special bequest when considered alone, but when considered in the light of the situation known to the testatrix when she made the will, they appear to me to clearly mean a special bequest of the life insurance fund alone.

As detailed by the majority, the testatrix drew her will one year after her husband's death, when the financial condition of his estate was developed and known. She had her husband's will in mind and knew his intention that the farm lands should go to the three sons charged with such sums as would cover the bequests of two thousand dollars to each of the four daughters. By special bequests, she fully confirmed and completed the husband's intentions so that each son would, upon her death, have title to the whole of

the farm which the father had intended for him and each daughter would be secure in her right to receive two thousand dollars in cash. Having done this, she disposed of her half of the community estate, and her net income for life being small at the best, there was then no likelihood that what had been the community estate could produce above her needs and pay any substantial sum in addition to those special bequests.

She then had three thousand dollars, received as insurance upon the life of her husband, which was something new and in addition to the community estate and something which she then considered it proper and necessary to dispose of. This sum of money she had carefully preserved from the day of its receipt. She had kept it separate and intact. When, by force of circumstances, she had been forced to draw upon this fund, she had treated the withdrawals as loans to herself and had promptly repaid such loans with interest, thus keeping the fund with its earnings intact.

These and other facts disclosed in the majority opinion and which need not be repeated, when applied to the language used by the testatrix, clearly indicate that the trial court correctly found the intent of the testatrix and correctly interpreted the will, and it follows that he properly applied the law when he adjudged that the legacy to Edward was specific.

Under the authorities cited and quoted from by the majority, the judgment of the trial court with respect to this legacy should be affirmed.

STEINERT, J. (dissenting)—I agree with Judge Tolman upon the question discussed by him in his dissenting opinion. But, going beyond that, I am of the further opinion that the judgment of the trial court was correct and should be affirmed in its entirety.

MILLARD, C. J., concurs with TOLMAN, J., and STEINERT, J.