ESTATE OF HOLMES: MADISON TRUST COMPANY, Trustee, Appellant, vs. HOLMES, Respondent.

*October 13, 1939—January 16, 1940.*

276

For the appellant there was a brief by *Sanborn, Blake & Aberg* and *Robert W. Arthur,* all of Madison, and oral argument by *Mr. Arthur.*

*Franklin W. Clarke* of Madison, for the respondent.

FOWLER, J.   George B. Holmes died testate leaving surviving him as his heirs, his widow, Lillian B. Holmes, and an adopted son, the defendant, Glenn C. Holmes.   His will was duly admitted to probate February 5, 1932.   He left personal property inventoried at $2,229.75 and a homestead and three other parcels of land, all of which except the homestead, less expenses of administration and a $50 legacy to a cemetery association, was by final judgment of the county court formally assigned to the widow "in accordance with the terms of said will."

On January 7, 1939, the plaintiff, as trustee of an express trust created thereby, filed a petition for construction of the will.   The provisions of the will which are material are as follows:

"Third, to my wife, Lillian B. Holmes, I give, devise and bequeath all the rest, residue and remainder of my estate, real or personal wherever situated, to have and to hold for the

term of her natural life, to use and spend the income thereof and to use and spend so much of the principal thereof as she shall see fit, hereby giving and granting unto my said wife, full power and authority to sell or convert into cash any of the real estate or personal property of which I may die seized or possessed and to invest and reinvest the proceeds thereof, it being my intention to give my said wife full and complete authority to hold, manage, use and dispose of my entire estate in whatever manner she shall see fit without being in any way responsible to any person for her use and management of the said property and without her being required to make any accounting whatsoever of her use of the said property.

"Fourth. . . . And in case my said wife shall survive me, and shall not have disposed of my said homestead during her lifetime, then, at the death of my said wife, I give and devise my said homestead to my said adopted son Glenn C. Holmes, subject to whatever mortgage or mortgages I may have placed thereon in my lifetime and to whatever mortgage or mortgages my said wife may have placed thereon between the time of my death and the time of her death.

"Fifth. . . . And in case my said wife shall survive me, I will and direct that whatever portion of my estate shall remain unexpended in her hands upon her death, excepting my said homestead, shall be turned over to the said Madison Trust Company, as trustee, and I direct the said trustee to manage my said estate in trust" to pay the income thereof to a cousin, during her life, and to her daughter after the cousin's death until she arrives at the age of thirty years and then to pay to her the principal.

"Sixth. I nominate and appoint my said wife Lillian B. Holmes, as executor of this will, and in case she shall not survive me I nominate and appoint the Madison Trust Company as executor of this will, and I direct that either executor herein named be permitted to serve without bond, and I grant to either of the executors herein named full power to sell and convert into cash any of the real estate of which I may die seized."

At the death of the widow there was remaining undisposed of by the widow the homestead and certain personal property left or derived from property left by the deceased. The homestead was by the judgment appealed from decreed to

have become vested under paragraph fourth of the will in the defendant, and the remaining personal property to have become vested in the appellant for administration under paragraph fifth. With this portion of the judgment there is no complaint. The controversy is over a portion of the judgment which determined that the will passed to the widow the fee of the three parcels of land other than the homestead and validated three deeds of the three parcels executed by the widow to the defendant Glenn C. Holmes under the following facts: Numbering the three parcels of land as (1), (2), and (3), No. (1) appraised at $650, was conveyed without any valuable consideration; No. (2) valued at $1,700 was conveyed without any valuable consideration; No. (3) valued at $6,500 was conveyed in 1935 without any consideration being paid or promised at the time of its conveyance. A $2,700 mortgage to secure a loan of $2,700 was negotiated by the defendant in 1937 and signed by both the widow and himself as was the mortgage note. The money raised on this mortgage was paid to the defendant and expended by him for care and support of the widow. The defendant has paid the interest on the mortgage and has made a principal payment of $100 thereon.

The trial judge first filed a decision that construed the will as giving to the widow a life estate in the property of the deceased, with power to devote such portion thereof to her own use and benefit as she might wish, held the plaintiff trustee entitled to the portion of the property which she did not so use to be administered according to the trust, and held the defendant liable to account for the income received from the real estate conveyed by the widow to him less the value of improvements placed thereon by him and expenses of administration and expenses of the widow during sickness. After receiving briefs and reconsidering the matter the trial judge filed another decision by which he decided that *Will of Zweifel,* 194 Wis. 428, 216 N. W. 840, wherein the va-

lidity of transfers by a widow made under similar circumstances was involved, and sec. 232.08, Stats., as therein applied, compelled him to hold that the will gave a fee in the land to the widow and empowered her to convey it without consideration if she so wished and thus validated her conveyances to the defendant.

The meaning and effect of a will must be derived from its four corners and any attending circumstances that throw light upon the intent of the testator. This rule is so firmly fixed and understood that no citation of authority is needed to support it. The intent of the testator, whenever it can be drawn as above stated, must determine and control any power of disposition given in the will and sec. 232.08, Stats., has no bearing upon the construction of the will.

Applying the rule above stated to the instant will we consider that the decision of the county court as first reached as to the construction of the will was correct. In determining the testator's intent all the terms of the will should be considered—not only those tending in themselves to indicate an absolute and unlimited power of disposition, but those tending to indicate a limited power in that respect—and such conflicting terms as exist should be so harmonized or considered in connection with each other as to express the real intent of the testator.

So considering all the terms of the instant will we consider that it appears that the testator made all the provision for the defendant that he wished to make, and that as he made provision for his cousin and her daughter, he manifested intent that the provision he made for the latter should not be diverted from them to the defendant, and indicates that he did not intend that his widow might frustrate and nullify his preference as to where his property not expended for her benefit should go by giving it to the defendant.

Other terms of the will indicate that the testator did not intend to give the widow power to give away the property.

The word "use" in the will should be given effect according to its common and primary meaning. "To use" is to make use of, to put to one's use or benefit, to use up, to consume, to employ to one's service or benefit, to use so as to derive service therefrom. Giving the use of a thing, does not give the thing itself, but implies that the thing is to be held and employed for the benefit or enjoyment of the beneficiary. A great number of cases to this general effect are cited in Words and Phrases, 1st, 2d, 3d, 4th, and 5th Series, many of them referring to the meaning of the word in devises of real estate to the use of the devisee. So construing it, the will manifests the intent of the testator that his wife should have the right to the fullest disposition of the property necessary to satisfy her needs or her wishes so long as the proceeds were used by herself or for her for that purpose. The will as a whole manifests intent to secure to the widow the means to provide for her needs and to satisfy her wants and desires. The carrying out of that intent negatives the idea that she might destroy that means by giving the entire property to a church or to some charity or to the furtherance of some "cause" in which she might become interested. The testator did not intend that the widow might thus defeat his obvious main purpose. The provision that the widow might "sell or convert into cash" the property also negatives that she might give it away. Other terms of the will indicate an intent that she might not give away the property. She was "to use and spend" the income or the principal of the property, but spending implies receiving something in return. To spend in common parlance, and according to the dictionaries is "to pay out money for things needed or desired." She was also empowered to "expend" the income or principal of the property but to expend is "to pay out, lay out, use up," and like "to spend" implies receiving something in return. The word "use" itself means "to employ for the accomplishment of a purpose." The purpose of the testator was to provide

for his wife. She was to have the right to use to the point of consumption the property to accomplish that purpose. Wherever in the will the widow is given power in connection with the property the word "use" is put in immediate context with it. She was given the property "to use and spend;" "to hold, manage, use *and* dispose of;" she was not to be responsible "for her use and management" thereof, and without being required "to make any accounting whatsoever of her use" thereof. The will does not say that the property may be disposed of by the widow as she sees fit, but that she may "use and dispose of" it as she sees fit. In disposing of it she must use it, that is apply it or its proceeds to her use. Her freedom from responsibility is from responsibility for her use of the property so far as she used it according to the intent of the testator as the will and the attending circumstances establish that intent.

As to the application of sec. 232.08, Stats., it appears to us that were we to apply that statute as controlling the power of disposition conferred by the instant will we would be putting the cart before the horse. The statute reads:

"*Life estate, when changed to fee.* When an absolute power of disposition, not accompanied by any trust, shall be given to the owner of a particular estate for life or for years such estate shall be changed into a fee, absolute in respect to the rights of creditors and purchasers, but subject to any future estates limited thereon in case the power should not be executed or the lands should not be sold for the satisfaction of the debts."

The court says in the *Zweifel Case, supra,* p. 436:

"The will, as we interpret it, gives the widow absolute power of disposition, not accompanied by any trust."

In that case the court interpreted the will before it applied the statute. It did not apply the statute in aid of construction of the will, as the trial judge apparently considered that it did and required him to do. The statute is not applicable by its

terms unless it confers an absolute power of disposition. The point of this case is that the will as first interpreted by the county court, and as we interpret it, did not give a power of absolute disposition. Therefore the statute does not apply. It is further to be noted that that statute was held by the court in the *Zweifel Case* not to create a fee. A fee would have given the widow the power to devise the property which the court held she did not have. The court held the will did confer power to give away the property, that is to convey it without consideration. Of course if the will conferred the power of absolute disposition of the property it implied the power to give it away, but the power so to do rested on the construction of the will, not on the statute.

It must be conceded that the general language of the Zweifel will, which is set out in the opinion of that case and will not be repeated here, relating to use and disposition by the testator's wife during her life and the provision for disposition of what should remain at her death are so like the terms of the instant will, that the provisions of the two wills are indistinguishable except for one provision of the Zweifel will that is not here present. After reciting the provisions for his wife and children and a grandchild above referred to as similar to those for the wife of the instant testator and for his cousin and her daughter, the Zweifel will declares (p. 433):

"The provisions herein made for my children and grandchild are in no wise or manner whatever to be any restriction upon my wife and in no wise or manner whatsoever to estop my wife from selling, conveying, using, incumbering, and disposing of my estate in whole or in part in any manner as she may see fit and proper, but is to apply only to such rest, residue, and remainder not used by my wife or that remains undisposed of by my wife at the time of her death."

The instant will contains no declaration that the provision for his cousin should not constitute any restriction on his wife's power of disposal. The declaration of the Zweifel will as to unrestricted disposition by the wife notwithstand-

ing the provision for the testator's children and grandchild might well be construed as giving to the wife a broader power of disposition than the provision for her would have had without it. Unless it be so construed we consider that the *Zweifel Case* was wrongly decided.

The above seems to us to be correct upon the authority of the Wisconsin cases taking them as a whole. From the language used in the wills involved in the Wisconsin cases the following seem to us most nearly in point: *Knox v. Knox*, 59 Wis. 172, 18 N. W. 155; *Jones v. Jones*, 66 Wis. 310, 28 N. W. 177; *Murray v. Kluck*, 87 Wis. 566, 59 N. W. 137; *Littlewood's Will*, 96 Wis. 608, 71 N. W. 1047; *Hovely v. Herrick*, 152 Wis. 11, 139 N. W. 384. None of these cases are referred to in the opinion in the *Zweifel Case, supra*, although all were decided before the latter. Only two Wisconsin cases are there cited: *Slaughter v. Bernards*, 97 Wis. 184, 72 N. W. 997, and *Will of Jansen*, 181 Wis. 83, 193 N. W. 972. In the *Jansen Case*, the devise was to the testator's wife "absolutely," in language not subject to construction. In the *Slaughter Case* a trust deed was construed. By its terms lands were conveyed to Long in trust "to the separate use and benefit" of Mrs. Slaughter "subject to her control and disposal." This was held in effect to give Mrs. Slaughter the right of absolute disposal of the property to be exercised through the trustee. In addition to these cases we have examined *Derse v. Derse*, 103 Wis. 113, 79 N. W. 44; *Post v. Campbell*, 110 Wis. 378, 85 N. W. 1032; *Auer v. Brown*, 121 Wis. 115, 98 N. W. 966; *Otjen v. Frohbach*, 148 Wis. 301, 134 N. W. 832; *Will of Richter*, 215 Wis. 108, 254 N. W. 103; *Will of Hutchinson*, 215 Wis. 349, 254 N. W. 531; and *Will of Doerfler*, 225 Wis. 418, 421, 425, 273 N. W. 460. These include all Wisconsin cases cited in the briefs and all others that we were able to discover, relating to life estates with right of consumption or power of disposition. None of these seem to us inconsistent with the construction above given to the instant will, under the lan-

guage directly involved in the instruments construed. The *Will of Doerfler, supra,* gave to the testator's wife "for her use and enjoyment during her life" all the testator's property, with provision that "after her death the balance" should go to others as directed. The wife was relieved from any accounting. The will was construed as meaning that the wife should have and enjoy all the property during her life to the extent required to maintain the accustomed standard of living; that the wife should be the sole judge of her requirements; and whatever of the principal was not required "should be preserved in the trust, the beneficial interests to pass eventually according to the testator's expressed wishes and not according to a voluntary disposition of the wife."

The will being construed as above stated, the question remains whether the fact that defendant devoted the $2,700 borrowed on the mortgage to the use of the widow operated as a consideration for and thus validated the deed of the mortgaged parcel, or whether the equity over the amount of the mortgage should go to the trustee to be devoted to the purposes of the trust. If we could spell out of the evidence an agreement by the son to care for the widow during her life this would constitute a consideration to support the deed. But admittedly there was no such agreement. The $2,700 was manifestly borrowed to be used for the purpose to which it was devoted by the grantee. No consideration whatever was paid or promised to be paid at the time the deed was executed. The mortgage was executed in December 1937, more than two years after the deed was executed. It was signed by the defendant Glenn Holmes and his wife and by the widow and the note was signed by Glenn and the widow. At the time the note and mortgage were signed the mortgagee paid $2,700 to the defendant Glenn. There was also sold by Glenn for $835 a bond which had belonged to the estate of the deceased. Both these sums were placed in the son's bank account, and the amount was disbursed by him for his mother to pay for her hospitalization and other ex-

penses of sickness and needs of his mother. These payments are claimed by the respondent to constitute a consideration for the deed referred to in item (3). We can see no element of consideration in the transaction. Every cent paid by the son was received directly from the estate of his father which his mother held to be used by her in accordance with the purpose and intent of the testator as declared by his will. The son did not borrow the money because he was under any obligation to do so, other than the moral obligation to care for his mother that he considered himself as her adoptive son to be under. This did not constitute a consideration for the deed and the deed must be held void. The son and his mother acted in good faith believing the will gave to the mother the power to give away the property if she desired to do so. The money received by the son should not be required to be repaid but the value of the equity in the premises should go into the trust and the court should direct some method of putting it there. This may be done by holding the deed void and holding the estate liable for payment of the mortgage as between the estate and the grantee. The result may be accomplished by requiring the grantee to execute conveyances of the property to the trustee upon its paying the mortgage and refunding to the grantee the amount of the principal and interest he has paid on the mortgage, the taxes he has paid thereon, and the expense of upkeep or improvement of any of the property deeded to him, against which must be credited the rents received by him.

We find no evidence to warrant the suggestion of the trial court—it was not made as a finding of fact—that the rents received by the defendant equal the amount of his payments on the mortgage, taxes, and expenses of upkeep. It may be that on an accounting the defendant will have something coming to him.

*By the Court.*—The judgment of the county court is reversed, and cause remanded with directions for further proceedings in accordance with the opinion.