BAKER–BOYER NAT. BANK v. HENRICKSEN et al.

No. 267.

District Court, W. D. Washington, S. D.

Sept. 29, 1942.

Burns Poe and Elizabeth Shackleford, both of Tacoma, Wash., and Cameron Sherwood and Marvin Evans, both of Walla Walla, Wash., for plaintiff.

J. Charles Dennis, U. S. Atty., Harry Sager, Asst. U. S. Attorney, and Thomas R. Winter, Sp. Atty., Bureau of Internal Revenue, all of Seattle, Wash., for defendants.

BLACK, District Judge.

The plaintiff executor seeks in this action a refund of about $23,000 of estate taxes and interest paid upon the estate of George T. Welch, deceased. The executor contends that the Commissioner of Internal Revenue incorrectly disallowed deductions approximating $170,000 from the return for concededly charitable bequests. The Commissioner's position is that under the will the widow was given power to invade and exhaust the corpus of such charitable bequests and that therefore they were not deductible. The executor takes the position that the will gave the widow no such power at all, and further that the construction of the will by a probate court of the State of Washington of general jurisdiction and also by the widow, which constructions denied her any such right, are conclusive.

George T. Welch, the decedent, a retired farmer of Walla Walla, Washington, died on April 15, 1937, at the age of ninety-five years, leaving surviving him his widow, Carrie Welch, then aged eighty-seven years; his son, Fred B. Welch, and his grandson, George B. Allen. He left an estate of $226,303.98, this being one-half of the community estate. Under the community property laws of the State of Washington the other one-half belonged to the widow.

Mr. Welch left a will dated in 1930 and a codicil dated in 1931. Under the will, as modified by the codicil, he made two cash bequests of $500 each, and gave, devised and bequeathed to his wife, Carrie Welch, a life estate in all the rest, residue and remainder of his estate. Subject to such life estate of Carrie Welch, he gave his son, Fred B. Welch, a life estate in $30,000 in cash or securities found in his estate, and also subject to the life estate of his wife, gave his undivided one-half in-

terest in certain community real property to his said son "as his absolute estate". Likewise, subject to the life estate of Carrie Welch, as aforesaid, he gave his grandson, George B. Allen, a life estate of $12,500 in cash or securities as found in his estate. As to such $12,500 the will gave and bequeathed the remainder in trust for charitable use by the Board of Conference Claimants, Inc., of the Pacific Northwest Annual Conference, Methodist Episcopal Church. All the remainder of his estate, subject to the wife's life estate in all of same, as above, and subject to the son's second life estate as to such $30,000 and subject to the son's said absolute estate in said real property, was given, devised and bequeathed to the Baker-Boyer National Bank as Trustee for the concededly charitable purposes of providing education for boys and girls, providing support for the poor, aged and infirm, and erecting a home for the aged as a memorial to the testator and his wife.

The executor insists that the chief and paramount intention of George T. Welch in the making of his will and codicil, as evidenced thereby and as shown by the admitted testimony introduced at the trial, was to provide for the charities which the Commissioner rejected as the basis for deductions from the taxable net estate. The Commissioner concedes that such were and are charities and would be deductible except for what he contends was the authority for the widow under the fifth paragraph of the will to invade the corpus of said charitable bequests.

Paragraph V of the will gave, devised and bequeathed "unto my said wife, Carrie Welch, for and during her lifetime, should she survive me, all the rest, residue and remainder of my estate, both real and personal, including the rents, issues and profits therefrom, and of whatsoever the same may consist and wheresoever situated, with the distinct understanding that no limitation is placed on my said wife in any expenditures which she may make for any purpose, or any accounting be made thereof, with the then remainder over upon her death unto my Trustee, hereinafter named, in trust, nevertheless, for the uses and purposes hereinafter mentioned," to-wit: concededly charitable uses and purposes.

In the succeeding paragraphs of the will the testator a number of times used the words "subject to the life estate hereinbefore given, devised and bequeathed unto my said wife, Carrie Welch, in my estate, should she survive me, as aforesaid". Moreover, in paragraph IX of the will, which specifically sets forth the powers and duties of the charitable trustee, it is stated: "Subject to each and every of the foregoing provisions of this my Last Will and Testament, including the life estate in my said estate hereinbefore given, devised and bequeathed unto my said wife, Carrie Welch, should she survive me, I do hereby give, devise and bequeath all the rest, residue and remainder of my property * * * whether real, personal or mixed, * * * unto my said Trustee, The Baker-Boyer National Bank, of Walla Walla, Washington, to have and to hold the same, together with all the privileges and appurtenances thereunto belonging, and all income and profits arising therefrom, to my said Trustee, perpetually, in trust" for the charitable purposes specified. Said Paragraph IX specifically gives said charitable Trustee authority over "the identical securities, properties, or investments received by it from my estate, whether it be at my death or at the death of my said wife, Carrie Welch, should she survive me" and specifically authorizes it "To grant, bargain, sell, exchange, convert and lease, * * * and * * * to pledge, assign, partition, subdivide and distribute * * * the income and principal of my said trust estate * * *. To receive and collect all income * * *. * * * to determine what shall constitute principal of the trust estate and what shall constitute gross income therefrom or net income available under the terms of this trust." The aforesaid use in the will of the term "identical" is extremely significant.

While the will thus so expressly, positively and definitely gives the Trustee power to sell and use the principal and income, or either, of the trust estate, such instrument no where gives the said widow any express authority to sell, convert or dispose of any of the securities or other properties of the estate or any express authority to invade the principal or corpus of the estate in any manner whatsoever.

But the Commissioner contends that the language in said fifth paragraph, to-wit: "with the distinct understanding that no limitation is placed on my said wife in any expenditures which she may make for any purpose, or any accounting be made thereof, with the then remainder over upon her death unto my Trustee," does by

834

necessary implication give her such authority to invade the corpus of such charitable bequests to the Trustee, as to make uncertain how much, if any, of such charitable bequests will exist at the time of her death. The Trustee insists that under the authority of Ithaca Trust Company v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667; Pennsylvania Company for Insurances on Lives, etc., v. Brown, 3 Cir., 70 F.2d 269; Gammons v. Hassett, 1 Cir., 121 F.2d 229; Mississippi Valley Trust Company v. Commissioner, 8 Cir., 72 F.2d 197; Burdick v. Commissioner, 2 Cir., 117 F.2d 972; United States v. Provident Trust Company, 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793; Farrington v. Commissioner, 1 Cir., 30 F.2d 915, 67 A.L.R. 535, and similar cases, that "the widow, having such a right to use any part of the corpus of the estate, there was no bequest to charity within the meaning of Section 303(a) (3) of the Revenue Act of 1926 as amended," 26 U.S.C.A. Int. Rev.Code § 812(d).

Plaintiff, however, contends that the widow had no authority of any kind except the right to the income of the life estate. Plaintiff further insists that even if there was any theoretical implied authority to use some small part of the corpus, which plaintiff in no wise admits, that actually the holdings of Ithaca Trust Co. v. United States, supra, and United States v. Provident Trust Company, supra, establish that the charitable bequests are still deductible, and plaintiff, in addition, cites numerous Federal and Supreme Court additional decisions, including particularly Mead v. Welch, 9 Cir., 95 F.2d 617; Commissioner v. F. G. Bonfils Trust, 10 Cir., 115 F.2d 788; Sanderson, Executor, v. Commissioner, 18 B.T.A. 221; and Boston, etc., Co. and Pfaff, Executors, v. Commissioner, 21 B.T.A. 394, to the same effect.

■■ The testator's intent is to be ascertained from the will as a whole and not from any isolated portion or portions. The intention of the testator as gathered from all parts of the will is to be given effect. Any doubtful or ambiguous expression cannot be permitted to defeat the obvious intent of the testator. 69 C.J. 52, 53, 59, 62, 63; Cowles v. Matthews, 197 Wash. 652, at page 654, 86 P.2d 273; Shufeldt v. Shufeldt, 130 Wash. 253, 227 P. 6; Evans v. Ockershausen, 69 App.D.C. 285, 100 F. 2d 695, 128 A.L.R. 177.

■ As stated In re Harper's Estate, 168 Wash. 98, at page 106, 10 P.2d 991, at page 993, 15 P.2d 1119: "In determining the meaning to be given to the words used in a will, extrinsic evidence of the surrounding facts and circumstances may be considered, not for the purpose of proving intention as an independent fact, but as an aid to a right understanding of the language that has been used."

To the same effect are: In re Holmes' Estate, 233 Wis. 274, 289 N.W. 638; In re Doepke's Estate, 182 Wash. 556, 47 P.2d 1009; Cotton v. Bank of California, 145 Wash. 503, 261 P. 104; Shufeldt v. Shufeldt, supra; 69 C.J. p. 63 § 1120.

■■ The purpose of Congress in providing for deductions of charitable bequests was to encourage testators to make the same. A charitable bequest is a favorite of the law and of the courts. The courts are solicitous to give that construction which will sustain rather than defeat a charitable deduction.

During the trial the court reserved ruling upon defendant's objections as to the admission of certain evidence while allowing the testimony of the witnesses to be heard as offers of proof.

This trial court is of the opinion that it is within its discretion to overrule all of such objections and to admit all of such testimony. However, the objections of defendant will be sustained as to the testimony concerning those certain conversations appearing in the transcript as follows: Commencing with the last word in line 3 to line 17, inclusive, page 9; commencing with the last word in line 21, page 11, to line 1, page 12, inclusive; lines 8 to 17, inclusive, on page 13; lines 3 to 13, inclusive, page 14; line 3 on page 52 to line 1 on page 53, inclusive.

The objections to all of the balance of the offers of proof are overruled. All of the remainder of the offers of proof is properly admitted in evidence for the purpose of showing the situation of the testator and his wife and the surrounding circumstances at the time of the execution of the will.

Under the uncontradicted testimony admitted in evidence it appears that at the time the will was executed the wife's half interest in the community estate approached a value of a quarter of a million dollars; that when the will was made she was about eighty years of age, an invalid, with a

brief life expectancy, and of fixed habits of simple frugality. Certainly the income from her one-half of the community estate plus the income from the life estate in her husband's property provided by his will made absolutely unnecessary any invasion by her of the corpus of any portion of her husband's estate.

After a careful analysis of the "four corners" of the will and codicil, of the evidence introduced at the trial, together with those matters which were stipulated by the parties, of said Section 303(a) (3), 26 U.S.C.A. Int.Rev.Code § 812(d), of the decisions of the Board of Tax Appeals, of the United States Supreme Court and of the Federal Courts, as well as of this state, I am convinced that plaintiff is entitled to prevail.

The widow was given no authority at all by the terms of the will to invade the corpus of such charitable remainders. It seems clear to me that likewise there was no implied authority so to do. The charitable bequests were remainders which vested in the Trustee at the time of the testator's death with merely the enjoyment deferred. There was nothing doubtful as to the identity of the trustee to whom such remainders were given, devised and bequeathed, nor of the certainty of the life estates being terminated.

From a consideration of the will and of the surrounding circumstances or from a consideration of the will alone it is apparent that the primary purposes of the testator was to provide for these charitable bequests. He expressly and clearly gave the Trustee authority over the principal of said bequests. But no where did he give the widow any express authority over any principal of his estate. The contrast between the express authority of the Trustee over the principal of the remainder and no express authority to the wife as to the principal is extremely cogent in establishing that he gave her no such authority by implication.

The situation and circumstances of the husband and wife and of his interest in said charities before the will and codicil were executed, at the time of the execution of same, and after their execution to the time of his death demonstrate that the testator had no expectation that his wife either needed to or would desire to invade the corpus of the estate at all. The history of events after his death is also very persuasive. For the widow never in the slightest degree invaded or expressed any wish to invade any of the principal or corpus of her husband's estate. In fact, she entered into an agreement recognizing that she had no such authority. See 69 C.J. p. 125 § 1167.

Moreover, the Superior Court of the State of Washington by decree of distribution and by an order holding the values of the bequests not taxable by the state because charitable, decreed that under the terms of the will the widow had no power to invade the corpus. Such decision of the Superior Court was pursuant to the widow's understanding of her rights under the will and while such decision that she had no right to invade the corpus deprived the State of Washington of more than $30,000 inheritance taxes the state did not appeal from such decision.

In Bayer v. Bayer, 83 Wash. 430, at page 435, 145 P. 433, at page 436, it is said: "Under the [state] Constitution the superior court is a court of general jurisdiction. It has jurisdiction of equity cases, actions at law, and proceedings in probate. * * * The Constitution does not make the superior courts probate courts. On the contrary it makes them courts of general jurisdiction, including 'all matters of probate.' As a court of general jurisdiction, it has the power to construe wills at the suit of proper parties." Also see Alaska, etc., Co. v. Noyes, 64 Wash. 672, at page 676, 117 P. 492.

It would, therefore, seem that there is much merit in plaintiff's contention that the Commissioner is bound by the decree of distribution by a Washington court of general jurisdiction and its order denying to the State of Washington any inheritance tax on such charitable bequests because under such construction of the terms of the will the widow had no right to invade the corpus. In such connection plaintiff cites: Uterhart v. United States, 240 U.S. 598, 36 S.Ct. 417, 60 L.Ed. 819; Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Sharpe v. Commissioner, 3 Cir., 107 F.2d 13; Hoxie v. Page, D.C., 23 F.Supp. 905.

Regardless of whether such decree of distribution and such order of the Superior Court of Washington are binding and controlling, certainly such court's interpretation is most persuasive inasmuch as it clearly is in accord with the intention of the testator.

Even if there was by implication a theoretical right of invasion I am convinced that United States v. Provident Trust Company, 291 U.S. 272, 54 S.Ct. 389, 78 L. Ed. 793; Ithaca Trust Company v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; and Mead v. Welch, 9 Cir., 95 F.2d 617, 618, are still decisive against the defendant.

The decision of Mead v. Welch, supra, is particularly in point. Although in that case the widow was given the express authority "to sell, convey, assign, transfer, collect, invest, and reinvest" the corpus, it was properly held that in view of all of the provisions of the will and "the further circumstance, disclosed in the record, that Mrs. Mead had a very large estate of her own" that the charitable bequest should have been deducted. In that case the decedent was a resident of California where, as the decision points out, "a life estate with power to sell the property is not, because of such power of sale, enlarged to a fee estate." In this case the decedent was a resident of the State of Washington where likewise, as stated In re Gochnour's Estate, 192 Wash. 92, at page 93, 72 P.2d 1027, it is held that the power of absolute disposal in the husband by the terms of the will did not prevent the devise and bequest to him constituting a life estate.

■ This court is not unmindful of the interpretation which defendant places upon the provisions that the widow is not to be limited in her expenditures or required to make an accounting thereof and that the then remainder shall go to the Trustee. But all of said words must be interpreted in the light of the provisions and purposes of the will as a whole and in the light of the practical meaning of such terms.

■ By common understanding, as well as by definition of lay or legal dictionary, the term "expenditures" generally contemplates paying out. See also In re Holmes' Estate, 289 N.W. 638, syllabus (7), also page 641; Suppiger v. Enking, 60 Idaho, 292, 91 P.2d 362, syllabus (1).

■ Under the unquestioned law applicable to life estates the life tenant is entitled to the rents, income and profits. 17 R.C.L. p. 628 § 18. It is evident that the testator wished to free his invalid wife during her short expectancy, in the event she should survive her husband at all, from being under the fear that she would be interfered with as to such expenditures as she might make of the income and from the fear that she would be required to make any accounting of such expenditures of the income. In the closing paragraph of his will the testator used these words: "In order that my said wife, Carrie Welch, may be relieved of the responsibility in the administration upon my estate, and the responsibility incident thereto, I do hereby nominate and appoint my said Trustee * * * the executor of this my Last Will and Testament."

The apparent theory of the defendant seems to be that the lack of such limitation as to expenditures and the lack of the necessity of her to account for her expenditures, while not in themselves giving her lawful authority to invade the corpus, would make it possible for her to wrongfully invade the corpus.

In Boden v. Johnson, 226 Mo.App. 787, 47 S.W.2d 155, it was held that the mother, entrusted with property, the proceeds of which were to be used to support the minor children, was accountable for failure to use the income for the children's benefit although the contract stipulated that she should not be required to account for "expenditures", for the reason that while not required to account for the expenditures that she was required to use the income for the children's benefit. Similarly in this case the widow, while not required to account for her expenditures of the income of the life estate, would not be permitted to wrongfully invade the corpus.

■ "Words omitted from a will may be supplied by the court whenever necessary to effectuate the testator's intention as expressed in the will." 69 C.J. 82 (§ 1140); In re Peters' Estate, 101 Wash. 572, 172 P. 870. The words "of income" it would seem might very properly be supplied immediately following the term "expenditures" in said paragraph V.

Actually it is more reasonable that the testator used the words "the then remainder" with the idea that the then remainder would represent the corpus plus a portion of the unexpended income rather than represent merely the substantially diminished corpus.

■ Corroborating such very reasonable assumption is the language employed by him in paragraph VII of the will and in the codicil with reference to the $30,-000 bequest, which was first subject to the wife's life estate and then to the son's

life estate with the remainder to the trustee for a specified charity. In each instance he mentioned "unused net income" as a possible addition to the principal. Paragraph VII of the will directed that the net income as to the $30,000 during the life estate of the son should be paid to him, and directs that all such net income after the wife's and son's death should be paid to the specified charity. How can we say that the testator did not assume that the period when the net income might not all be used would be during his wife's life estate? In the codicil, for example, the testator, after reciting the right in his wife in connection therewith, employs these words: "I do hereby give and bequeath the principal of said trust fund, with any remaining unused net income therefrom, if any there be, conditioned as above, unto my said Trustee". Therefore "the then remainder" can be considered as the corpus plus "any remaining unused net income therefrom".

If the defendant is correct in his interpretation of the lack of limitation on expenditures, the lack of requirement for accounting, and the use of the term "then remainder" with reference to the wife's life estate, giving her the right to invade and during her life completely exhaust the remainders, then the wife likewise by reason thereof had the right to invade and dispose of the testator's undivided one-half interest in certain realty by paragraph VI of the will given, devised and bequeathed to the son, subject to the wife's prior life estate. Defendant's brief asserts that Carrie Welch by reason of such language in Paragraph V not only had the right to invade, sell and dispose of the entire corpus but also even to give away so much thereof as she might wish. If such contention is sound then she could during the existence of her life estate by quitclaim deed give away the son's vested remainder in said real estate. It does not appear to me that anyone would seriously contend that the grantee of any deed from Carrie Welch, whether of gift or sale, could hold title to such real property against the son.

Unquestionably, the father never intended that the widow, by virtue of her life estate in said half interest in such real property, could deprive the son of his vested remainder therein. And if she could not invade the corpus of said real property it necessarily follows that she could not invade the corpus of the charitable bequests. The son's remainder in said real property was subject to the same life estate and subject to the same provisions of no limitation on expenditures, no accounting, and the "then remainder" as were the charitable bequests.

In the same paragraph V upon which defendant relies, we find this language: "but should I survive my said wife, Carrie Welch, then upon my death I do hereby give, devise and bequeath all the "then rest, residue and remainder of my estate * * * unto my said Trustee". Obviously, the "then remainder" a few lines before in the same paragraph V with reference to the wife refers to the same type of a "then rest, residue and remainder" as the testator would leave if she predeceased him. The "then" in Paragraph V used in connection with the wife is no different in type, degree, meaning or implication than the similar "then" a few lines later in the same paragraph used in connection with the testator himself in the event she predeceased him. Since the "then" in Paragraph V with reference to the "rest, residue and remainder" at the death of the testator of necessity refers to the estate after the previously mentioned bequests have been carved therefrom, it follows that said "then" used in connection with the widow similarly refers to the same testator's estate after the same bequests have been carved from such estate. Mead v. Welch, supra.

The defendant further urges that the spendthrift restrictions on alienations of the income of their life estates by the son and grandson and lack of any such restriction upon the wife is further proof of her implied power to invade the corpus. The contrary appears. There was no provision restricting either the son or grandson from invading the corpus. There was no necessity as they had no such authority.

Likewise, there was no provision to restrict the wife from invading the corpus of the life estate. There was no need because she likewise had no authority nor any such inclination. Of course, there was no restriction upon her alienation of her right to income from her life estate as there was no reason at all for any spendthrift precaution as to her.

That portion of section 81.46 of Regulations 105, issued in 1942 by the United States Treasury Department, Bureau of Internal Revenue, cited by plaintiff, is not, of course, applicable to this cause, the de-

cedent having died in 1937. Section 81.1 thereof specifies that such Regulations 105 "apply only to estate taxes imposed by chapter 3 of the Internal Revenue Code (53 Stat., Part 1 [26 U.S.C.A. Int.Rev.Code § 800 et seq.]) on the estates of decedents dying after February 10, 1939".

For the reasons stated in this opinion and in view of the testator's intent as disclosed by the will and the evidence admitted in this cause and by virtue of the court decisions herein cited, plaintiff is entitled to a refund of the taxes and interest paid upon the worth at time of testator's death of said charitable bequests, which bequests as in Mead v. Welch, supra, were "ascertainable on an actuarial basis and should have been deducted in determining the estate tax."