761 F.2d 442
 55 A.F.T.R.2d 85-1593, 85-1 USTC P 13,613
 INDEPENDENCE BANK WAUKESHA (N.A.), formerly known as First
National Bank of Waukesha, Personal Representative
of the Estate of Mary C. Walter,
Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 84-2292.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 18, 1985.
Decided May 9, 1985.
 
 Dorothy H. Dey, Prosser, Wiedabach and Quaoe, Milwaukee, Wis., for plaintiff-appellant.
 Gary P. Gray, Asst. Atty. Gen., Dept. of Justice, Tax Div., Washington, D.C., for defendant-appellee.
 Before CUDAHY and COFFEY, Circuit Judges, and GRANT, Senior District Judge.*
 COFFEY, Circuit Judge.
 
 
 1
 This is an appeal from a decision of the district court denying the appellant's request for a federal estate tax refund. The Internal Revenue Service ("IRS") assessed a deficiency of $25,657 plus interest of $4,985 against the plaintiff-appellant, Independence Bank of Waukesha ("Bank"), the personal representative of the Estate of Mary C. Walter. There was no dispute as to any material fact and both parties moved for summary judgment in the district court. The district court upheld the IRS's deficiency ruling, finding that Mary Walter possessed a general power of appointment over the trust estate of her late husband, John Walter, and thus the Bank was required to include in Mary Walter's gross estate the value of the trust assets. We affirm the decision of the district court denying the requested tax refund.
 
 
 2
 * John Walter died on November 12, 1953 and was survived by his second wife, Mary C. Walter, his daughter, Josephine David, born during his first marriage, and four grandchildren. PARAGRAPH SECOND of Mr. Walter's will created a trust with a power of appointment in favor of his wife Mary C. Walter. This portion of the will provided in part:
 
 
 3
 "SECOND:
 
 
 4
 All the rest, residue and remainder of my property, both real and personal, I give, devise and bequest to my beloved wife, Mary Walter, in trust to be used by her for her own proper maintenance in the station of life to which she and I have been accustomed during my lifetime and for the benefit of my daughter, Josephine David of the City of Chicago, Illinois.
 
 
 5
 It is my wish that my said wife, Mary Walter, shall use her own discretion as to how much of my property she will use for her own maintenance during her lifetime and I specifically direct that she may use so much of my property as she desires for her own use and for whatever purpose she desires to use the same, without court approval and I further direct my said trustee to pay such sums of money out of my said estate as might be necessary for the proper maintenance of my daughter, Josephine David, as she, in her sole discretion and judgment, may deem necessary."
 
 
 6
 Mrs. Walter was appointed trustee of the trust of John Walter on October 8, 1954. The value of the trust corpus at the time was $36,597. Mary Walter died testate on February 27, 1979, and the Bank was designated as the personal representative of her estate. On November 23, 1979, the Bank filed a United States Estate Tax return and excluded from Mary Walter's gross estate the value of the trust assets, assessed at $95,537, on the date of her death. The Bank excluded the trust assets on the grounds that they were subject to a nontaxable special power of appointment. According to IRC Sec. 2041(b)(1)(A), "[a] power to consume, invade or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent" may be excluded from the decedent's gross estate. The Commissioner of the Internal Revenue Service, however, assessed a deficiency, plus interest, arguing that the trust corpus was fully taxable as it was subject to a general power of appointment. According to IRC Sec. 2041(a)(2), property that is subject to a general power of appointment at the time of the decedent's death is includable in the decedent's gross estate. A general power of appointment is defined as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate...." IRC Sec. 2041(b)(1).
 
 
 7
 The Bank paid the deficiency and the interest, and subsequently filed a claim for a refund. The IRS did not disallow the claim, but also did not refund any money. The Bank then commenced this action in the district court requesting a refund.
 
 II
 
 8
 The issue presented is whether it was John Walter's intent to create a general or a special power of appointment at the time the will took effect. If Mr. Walter intended to create a special power, limited by an ascertainable standard relating to the health, education, support, and/or maintenance of the decedent, then under section 2041(b)(1)(A) the trust assets are not includable in Mary Walter's gross estate and the IRS owes the Bank a refund. However, if Mr. Walter created a general power, exercisable in favor of the decedent, her estate, her creditors or the creditors of her estate, then these assets are taxable as part of Mary Walter's estate and no refund is due.
 
 
 9
 A determination of the legal rights and interests created by an instrument is a question of state law. Morgan v. Commissioner, 309 U.S. 78, 80, 60 S.Ct. 424, 84 L.Ed. 1035 (1940); Brantingham v. United States, 631 F.2d 542, 545 (7th Cir.1980). In this case, Wisconsin law controls and, as elsewhere, in Wisconsin the paramount objective of will construction is to ascertain the testator's intent. Estate of Ganser, 79 Wis.2d 180, 186, 255 N.W.2d 483, 486 (1977). Intent is determined from the language of the will read in light of the surrounding circumstances at the time of the will's execution. Id. All terms of the will must be considered--those indicating a trustee's absolute power of disposition as well as those indicating a limited power--and harmonized to express the real intent of the testator. Estate of Holmes, 233 Wis. 274, 279, 289 N.W. 638, 640 (1940).
 
 
 10
 Reading John Walter's will in its entirety leads us to conclude that Mr. Walter's clear and specific intent was to create a general power of appointment in his wife's favor. If the instrument contained only the language in the first paragraph of PARAGRAPH SECOND, a special power would have been created. This language empowered Mary Walter to use the trust assets "for her own proper maintenance in the station of life to which she and I have been accustomed ...." If the provision in the will giving the trust property to Mary Walter had terminated at this point, Mary Walter's power of appointment would have been limited to an ascertainable standard as described in section 2041(b)(1)(A) and 26 C.F.R. 20.2041-(c)(2). However, in the second paragraph of PARAGRAPH SECOND Mr. Walter further emphasized his true intention by elucidating that he was giving his wife a broad power to dispose of the trust corpus, stating that Mary Walter "shall use her own discretion as to how much of my property she will use for her own maintenance ... and I specifically direct that she may use so much of my property as she desires for her own use and for whatever purpose she desires to use the same, without court approval...." The trustee (Mary Walter) was also authorized to make payments to other beneficiaries "as she, in her own sole discretion and judgment, may deem necessary."
 
 
 11
 The broad and all inclusive language in the second paragraph of PARAGRAPH SECOND manifests John Walter's clear intent to give his wife an unlimited power to invade the trust's corpus.[1] Mary Walter's power to use the trust's assets was not limited to providing for her own health, support or maintenance, but extended to "whatever purpose she desires." We recognize that the language in the will is not as artfully drafted as we might desire in that the first and second paragraphs of PARAGRAPH SECOND are not as consistent as they might be. However, we must construe the provisions of a will to be consistent rather than to be in conflict. See Schaefer v. Schaefer, 52 Wis.2d 471, 190 N.W.2d 538 (1971). We, therefore, conclude that the terms of John Walter's will considered in its totality, evince Mr. Walter's unambiguous intent to create a general power of appointment in favor of Mary C. Walter,[2] the only consideration being that she exercised her broad powers in good faith. Good faith, however, is not an ascertainable standard under section 2041(b)(1)(A). See, e.g., Jenkins v. United States, 428 F.2d 538, 546 (5th Cir.), cert. denied, 400 U.S. 829, 91 S.Ct. 59, 27 L.Ed.2d 59 (1970); Strite v. McGinnes, 330 F.2d 234, 240 (3d Cir.), cert. denied. 379 U.S. 910, 85 S.Ct. 185, 13 L.Ed.2d 182 (1964).
 
 
 12
 The decision of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Robert A. Grant, Senior District of the Northern District of Indiana, is sitting by designation
 
 
 [1]
 The appellant relies on two cases to support its position that John Walter's will created an ascertainable standard limiting Mary Walter's power of appointment. In the first case, Brantingham v. United States, 631 F.2d 542 (7th Cir.1980), our court, construing Massachusetts law, held that the power of appointment created by the will in that case was limited by the phrase "as in her judgment as necessary for her maintenance, comfort and happiness"; however, the will in that case did not contain the broad provisions provided for in PARAGRAPH SECOND of John Walter's will. The appellant also relies on Estate of Holmes, 233 Wis. 274, 289 N.W. 638 (1940) and argues that this case demonstrates that Wisconsin courts strictly construe any powers of appointment. However, Holmes is distinguishable since it held that a spouse with a broad power to dispose of an estate cannot give it away by inter vivos gifts since this would defeat the intent of the testator. In this case, however, Mrs. Walter had a broad power to invade the trust for her own benefit and the question is whether she was limited by any ascertainable standard
 
 
 [2]
 The appellant argues that such an interpretation would effectively eliminate the first paragraph in PARAGRAPH SECOND. We disagree for if we were to accept the appellant's position that the ascertainable standard in this case is demonstrated by the language "for her own proper maintenance" in the first paragraph, it would defeat testator's intent to give her a broad power over the assets of the estate. Thus, in harmonizing the two paragraphs, it is more appropriate to give way to the second paragraph since the power over the assets is broad and encompasses the power given in the first paragraph